[Civ. No. 5802.  First Appellate District, Division Two.—June 11, 1927.]

## CHRISTIAN SCHLAKE, Jr., Respondent, v. EMMETT W. McCONNELL, Appellant.

[1] AGENCY — EXISTENCE OF AGENCY — CONTRACT FOR EXCHANGE OF PROPERTY—RESCISSION—EVIDENCE—FINDINGS.—In this action to rescind a contract for the exchange of real property for stock of a concessions corporation, evidence that defendant stated to plaintiff that another was his agent and directed plaintiff to transact business with such other person as his agent was sufficient to support a finding of agency for defendant in the exchange of stock.

[2] ID. — AUTHORITY OF AGENT — LIABILITY OF PRINCIPAL — PRESUMPTIONS—EVIDENCE.—In such action, where it was shown by the evidence that a third person was the sales agent of defendant in disposing of the stock, it must be presumed that such person had authority to talk, and the liability of defendant as principal cannot be limited to such portions of the talk of the agent as may have been authorized by defendant's undisclosed instructions.

[3] FRAUD — CONTRACT FOR EXCHANGE OF PROPERTY — RESCISSION — FALSE REPRESENTATIONS—EVIDENCE—FINDINGS.—In an action to rescind for fraud a contract for the exchange of stock in a concessions company for real property, a finding that the company was represented as "free from debt and not indebted in any manner" was of a material fact, sufficient to support an alleged false representation, although the insolvency of the company was not proven.

[4] ID.—STOCK TAKEN IN EXCHANGE FOR REAL PROPERTY—VALUE OF STOCK—EVIDENCE—FINDINGS.—In such action, evidence that the stock had no value when delivered to plaintiff, and that the concessions company possessed no property except stock in a separate corporation composing a consolidated company, and that the company was indebted to defendant on its promissory note, supported a finding that the stock was worthless.

[5] EVIDENCE — PRIMA FACIE CASE — PROOF OF NEGATIVE. — Where a party has the burden of introducing a *prima facie* case by proving the existence of a negative, slight evidence is sufficient.

[6] FRAUD — FALSE REPRESENTATIONS — MATERIALITY OF EVIDENCE — FINDINGS—RESCISSION.—In such action, it was not necessary that plaintiff prove every alleged false representation, but he was entitled to rescission if the evidence was sufficient to sustain a finding as to one material fraudulent representation.

[7] ID. — EXECUTION OF DEEDS — RELIANCE ON REPRESENTATIONS OF AGENT — EVIDENCE — FINDINGS. — In such action, a finding that plaintiff relied on the representations of defendant's agent was supported by evidence which showed that plaintiff would not have made deeds if he had not believed the agent's statement as to the company's financial condition, of which he had no independent knowledge.

[8] ID.—FALSE REPRESENTATIONS—CONFLICT OF EVIDENCE—APPEAL.— In such action, conflicts in plaintiff's testimony as to reliance by him on the alleged false representations of defendant's agent were addressed to the trial court, and on appeal do not support the contention that there was no evidence that plaintiff relied thereon.

[9] ID.—CONTRACTS—NOTICE OF RESCISSION—TIME.—In such action, notice of rescission by plaintiff the day after he learned the facts showing fraud was sufficiently prompt under section 1691 of the Civil Code.

[10] CONTRACTS—RESCISSION—NOTICE—TIME—EVIDENCE.—Whether notice of rescission of a contract has been given in time must be determined by the particular facts of each case.

[11] ID.—EXCHANGE OF PROPERTY—NOTICE OF RESCISSION—EVIDENCE. Where notice of rescission of a contract to exchange real property for stock in a concessions corporation was delivered into the hands of an express company with directions to serve it on defendant at his place of residence, and was produced at the trial and received without any objection, and notice of *lis pendens* was recorded a few days after notice of rescission was sent, it could not be claimed that plaintiff did not rescind at all.

[12] FRAUD—EXCHANGE OF PROPERTY—RESCISSION—OFFER TO RESTORE. In this action to rescind for fraud a contract for the exchange of stock in a concessions company for real property, plaintiff was relieved from the necessity of offering to return or cancel stock certificates prior to beginning the action, where defendant refused under any circumstances to return title to the land conveyed to him.

5.   See 10 Cal. Jur. 1159.
6.   See 12 Cal. Jur. 834, 835.

[13] ID.—WHEN RESTORATION UNNECESSARY.—In such an action, the duty to restore or to offer to restore extends to "everything of value," and where the stock was found to have been worthless there was nothing which plaintiff was required to restore.

(1) 2 C. J., p. 954, n. 83.    (2) 2 C. J., p. 566, n. 17, p. 921, n. 67.    (3) 23 C. J., p. 240, n. 82.    (5) 23 C. J., p. 27, n. 69.    (8) 4 C. J., p. 883, n. 33.    (9) 23 C. J., p. 214, n. 57.    (10) 13 C. J., p. 616, n. 97.    (11) 23 C. J., p. 215, n. 67.    (12) 23 C. J., p. 216, n. 80.    (13) 23 C. J., p. 216, n. 84.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goldman & Altman and Wm. S. Wells, Jr., for Appellant.

W. F. Cowan and Fry & Wood for Respondent.

STURTEVANT, J.—The plaintiff was the owner of two different tracts of land located near Sebastopol in Sonoma County. He executed a contract of exchange whereby he transferred under two separate contracts the said lands to the defendant for shares of stock in the Consolidated Concessions Company, a corporation. Thereafter he discovered certain facts which he believed entitled him to rescind the contracts of exchange by reason of alleged false representations of the defendant and one J. O. Wyatt, the agent of the defendant, and thereupon he gave a notice purporting to rescind the contracts. Thereafter he commenced this action and he so framed his pleadings that he prayed separately, as to each exchange, that it be (1) rescinded as for fraud, and (2) that his deed be canceled as for a total failure of consideration. The trial court made findings in favor of the plaintiff and from a judgment entered thereon the defendant has appealed.

Prior to 1913 preparations were made to hold an international exposition at San Francisco in 1915. For the purpose of conducting the enterprise the Panama Pacific

12.  See 4 Cal. Jur. 768.
13.  See 4 Cal. Jur. 767.

Exposition Company was incorporated. That company granted certain concessions. Among them it granted a concession to install and operate the (1) Inside Inn; (2) Scenario of the Creation of the World; (3) Scenario of the Evolution of the Dreadnaughts of the United States Navy; (4) Cyclorama of the Battle of Gettysburg, and (5) the Palace of Amusement. Each of said concessions was incorporated and each corporation conveyed to the defendant a block of stock. Thereafter, on July 15, 1913, another corporation was formed, the Consolidated Concessions Company, having $600,000 preferred stock and $1,200,000 common stock. It was provided that the preferred stock of the Consolidated Concessions Company should be sold at par $10 per share, and with each share of preferred stock so sold there would be given as a bonus one share of the common stock. After its organization the defendant conveyed to it his shares of stock in the corporations above mentioned and received in payment the promissory note of the Consolidated Concessions Company and 60,000 shares of the common stock of the Concessions Company. Also 3,750 shares of its common stock "as collateral security for the payment of the promissory note." The defendant's contract with the Consolidated Concessions Company in the third paragraph thereof contained a covenant that the company would pay the promissory note out of the first moneys which it should receive "from any source whatsoever."

Prior to the initiation of any of these transactions the plaintiff was a farmer at Sebastopol and so far as the record discloses entirely uninformed regarding corporations, the management thereof, and the methods of ascertaining the value of the securities thereof, and in particular of corporations engaged in the operation of concessions at or in connection with public affairs. Whereas the defendant, according to the prospecti offered in evidence, had "had more than twenty-five years' experience in the handling of international exposition concessions" covering international expositions of the world 1893–1911.

The plaintiff alleged and the trial court found that the defendant's agent, J. O. Wyatt, made the following representations and that each and all were false:

"(A) That the said Consolidated Concessions Company was a solvent corporation and was free from debt and was not indebted in any manner;

"(B) That the said Consolidated Concessions Company, a corporation, owned and controlled the following concessions or places of amusement in the Panama Pacific International Exposition, which was to be opened and held in the City and County of San Francisco, in the year 1915, to-wit: The Inside Inn; the Narren Palast (Palace of Amusement); The Scenario of the Creation of the World; The Scenario of the Evolution of the Dreadnaughts of the United States Navy (Monitor and Merrimac); The Cyclorama of the Battle of Gettysburg;

"(C) That the said Consolidated Concessions Company had paid for all of its buildings and equipment as far as the same had been constructed and supplied for said concessions and places of amusement up to said date, and that said corporation would be financially able to fully equip and construct said concessions and places of amusement and would equip and construct the same, and that the same would be fully constructed and equipped at the time of the opening of said Panama Pacific International Exposition, and that the same would be open so as to secure the patronage of the public and would earn large profits which would be paid to the stockholders of said corporation, at least twice each month during the continuance of said Exposition;

"(D) That owing to the condition of stringency prevailing in financial circles it was deemed advisable to exchange the shares of said capital stock of said Consolidated Concessions Company for real estate in the State of California, and that said corporation had arranged to receive such land and have it held for the use of said corporation, and that money would be borrowed thereon by said corporation to complete the buildings and equipment for said concessions, and that plaintiff's said land would be taken in said defendant's name, in accordance with said arrangement;

"(E) That said Consolidated Concessions Company, a corporation, had an agreement that it was to pay to the Panama Pacific International Exposition twenty (20%) per cent and no more, of the gross receipts of said concessions and places of amusement respectively;

"(F) That the preferred capital stock of the Consolidated Concessions Company, a corporation, was then worth the sum of ten ($10.00) dollars per share, and that for each share of preferred stock sold a bonus of one share of the common stock of said corporation was given to the purchaser, and that the shares of preferred stock in said company were practically the same as cash at par value, and that if said plaintiff would exchange his said land for said stock, he, the said plaintiff, would be getting substantially cash for his land."

[1] (1) The plaintiff alleged and the trial court found that J. O. Wyatt was the agent of the defendant in the negotiations. The appellant contends that the finding is not supported by the evidence. True it is that the defendant and J. O. Wyatt gave testimony in effect supporting the claim now made by the appellant. However, it is equally clear that the plaintiff testified that the defendant stated to him that J. O. Wyatt was his agent and directed the plaintiff to transact the business with and through Wyatt as such agent.

[2] (2) The appellant also contends that Wyatt's representations were not shown to be within his authority. As we have just stated, there was evidence introduced to the effect that Wyatt was the sales agent of the defendant and as such he presumably had authority to talk. The appellant cites us to no authority, and we know of none, to the effect that in a case of this kind when it transpires that an agent is authorized to transact a line of business which can only be brought about by talking that then and in that event his principal will be liable for only such portion of the words of mouth as may be authorized by the undisclosed instructions of the principal.

[3] (3) The appellant contends that there is no evidence that the Consolidated Concessions Company was insolvent or that its stock was worthless. Solvency, as a factor, is a part of finding (A) *supra.* However, it is only a part. If it is stricken out of the finding, the finding is not deprived of all materiality. As so deleted the finding would stand "that the said Consolidated Concessions Company was free from debt and was not indebted in any manner," and, standing alone, this would be a material fact sufficient to support an alleged false representation.

[4] The attack is also, in part, an attack on finding (F) *supra,* in which the trial court found that the shares of stock transferred to the plaintiff were worthless. The appellant contends that there is no evidence to support the finding. However, some of the witnesses testified that the stock had no value when it was delivered to the plaintiff. Furthermore, the uncontradicted facts are that at the time of the first exchange and continuously thereafter, the Consolidated Concessions Company possessed no properties except a block of stock in each of the corporations above named. That it was indebted to McConnell on its promissory note, which was written for the sum of $500,000. It was also developed in evidence that said note is still outstanding and unpaid at least in part. That moneys were not subsequently received. All of these facts were properly received in evidence and were doubtlessly considered by the trial court in making its findings. It is patent that the stock had no value until the promissory note was paid. However, the appellant calls attention to the amount of corporate stock in other corporations which this corporation held and he argues that the respondent's proof did not go far enough. [5] The respondent was in the position of introducing a *prima facie* case to prove the existence of a negative. When such is the burden of a party, slight evidence is sufficient. In view of all the facts of this case we may not say that respondent's evidence was insufficient to support the finding that the stock was worthless.

[6] Although this point is addressed to the facts found in findings (A) and (F), these findings are only a part of the alleged misrepresentations. There are many others in findings (B), (C), (D), and (E). It was not necessary that the plaintiff prove every alleged false representation. "If the finding is sustained as to one material fraudulent representation, it is enough." (*Beeman* v. *Richardson,* 185 Cal. 280, 282 [196 Pac. 774].)

[7] (4) The appellant asserts that the plaintiff did not rely upon Wyatt's statements. The plaintiff in one place testified that he would not have made the deeds if he had not believed the statements made by Wyatt and McConnell; that at the time he executed the deeds he had no independent knowledge as to the financial condition of these corporations—only that they were all paid for as far

as they had gone; that that was all he knew about it; that Wyatt was the only one who gave him the information. The foregoing testimony squares with the surroundings and the location of the witness at the time the deeds were executed. [8] It may be conceded that in another passage the same witness testified that the only representation which was made to him by Wyatt upon which he relied was that the company was to pay dollar for dollar for his stock. The conflicts in the testimony were addressed to the trial court and do not support a contention in this court that there was no evidence.

[9] (5) The appellant contends that the plaintiff did not rescind promptly. In this connection appellant calls attention to the fact that one of the deeds was made on the fourth day of November, 1914, and one was made on the twelfth day of December, 1914. He then calls to our attention the fact that the exposition opened on February 20, 1915. The appellant argues that therefore as early as March 6, 1915, no dividends having been paid, plaintiff knew that at least one representation (finding C, *supra*) was false and he further argues that inquiry would have demonstrated that the others were false and, therefore, the delay is fatal. (*Oppenheimer* v. *Clunie*, 142 Cal. 313 [75 Pac. 899].) The argument is not convincing. The appellant is resting it on the weakest portion of the plaintiff's case, to wit, when a dividend would be paid or the amount thereof. The authority cited is clearly distinguishable in its facts. The respondent contends that he was not bound to give a notice of rescission until he was "aware of his right to rescind." (Civ. Code, sec. 1691.) In that connection he points out that on August 13, 1915, in a conversation with Mr. Cappelman, he learned the facts. The record discloses that the next day he served his notice of rescission. [10] Every case must largely depend on its own facts. Considering, as we must, each and all of the facts with reference to each particular point, in so far as any fact throws any light whatever, we think it is patent that the notice of rescission in the instant case was not given at a date too late to be effective as a notice of rescission.

[11] In this same connection the appellant argues that the plaintiff did not rescind at all. Thereupon he cites the record to the effect that the notice of rescission

was delivered into the hands of Wells Fargo and Company with directions to serve it on the defendant at the Inside Inn; that two or three days later the express company returned the document with the information that the defendant could not be found, that nobody knew where he had gone, and that it was impossible to have the paper delivered to him. Appellant then quotes the record on several matters which the appellant knew regarding his whereabouts, but there is no showing that the respondent knew any of those facts. In view of the importance of the defendant as the creator of so much of the exposition, as is disclosed in the prospecti, and in view of the fact that during at least a part of the year 1915 the defendant resided at the Inside Inn, it is quite impossible in the absence of fraud to explain how those in authority at the Inside Inn could have truly made such statements as those that were made to Wells Fargo and Company. Furthermore, the notice of rescission was produced at the time of the trial and was offered in evidence. It was received without any objection whatever. Mr. Cowan testified that three or four days after the notice of rescission was sent that the plaintiff's suit in rescission was prepared and filed and at the same time there was duly recorded a notice of *lis pendens*. Taking into consideration the entire record in this case, and assuming for the moment that the service of the notice would have been held defective if the attack had been made in time, nevertheless, we are unable to say that the record before us showed error or that the error was prejudicial.

[12] (6) When each exchange was made a certificate of stock was issued in the name of the plaintiff. At the same time other certificates were isued to Wyatt, Sanborn, or Dorwood. The appellant contends that in his notice of rescission the plaintiff did not offer to return the stock so issued to Sanborn, Wyatt, and Dorwood, and therefore the offer to restore was insufficient. To this point there are several sufficient answers. The court found that as to the first exchange Wyatt proposed and the plaintiff consented to exchange certain parcels of land for 2,014 shares, of which 100 shares would be delivered to Sanborn in settlement of a claim for compensation as broker. As to the

other parcel the trial court made a similar finding except that 70 shares were delivered to Sanborn. The trial court also made a finding which is very full and complete and finds that the plaintiff offered to restore everything received by him and did restore by depositing the certificates by him received with the clerk of the court for the use of the defendant. The court also found that the certificates delivered to Sanborn · were for shares of stock which had no value whatever and that Sanborn destroyed them without the plaintiff's knowledge or consent, but that Sanborn had conveyed his interest to the plaintiff and that such assignment had likewise been deposited in court for the use of the defendant and that the defendant had suffered no loss or damage because the certificates were destroyed. The defendant's answer and the evidence introduced by the defendant and his objections made at the trial were in effect a positive refusal under any circumstances to return the title to the lands which had been conveyed to him, and his positive refusal relieved the plaintiff from the necessity of offering to return or cancel the certificates prior to the beginning of the action. (*McDonald* v. *Pacific Debenture Co.*, 146 Cal. 667, 672 [80 Pac. 1090].) **[13]** Furthermore, in an action of this kind the duty to restore or to offer to restore extends to "everything of value." As stated above the trial court found that neither the plaintiff nor Sanborn had received anything of value. It follows that there was nothing to be restored. (*Nichols* v. *Michael*, 23 N. Y. 264, 273 [80 Am. Dec. 259]; *Martin* v. *Lawrence*, 156 Cal. 191, 194 [103 Pac. 913].)

(7) As stated above, the plaintiff's pleadings placed his case as to each exchange on two different grounds, (1) rescission and (2) cancellation. All that has been said regarding the points made by the appellant does not take into consideration the second theory presented by the plaintiff's complaint. The appellant makes no attack thereon except as the same may be found in the attack on the findings (A) and (F), *supra*. We have shown that those attacks are not well founded. As to the second theory the trial court made findings on all allegations in favor of the plaintiff. Those findings each and all were

sustained by the evidence. On that theory alone the judgment should not be disturbed.

We find no error in the record. The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.