[No. B033654. Second Dist., Div. Seven. Apr. 7, 1989.]

MAGNECOMP CORPORATION, Plaintiff and Appellant, v. ATHENE CO., LTD., Defendant and Respondent.

**COUNSEL**

Richard E. M. Brakefield, Craig R. Arndt and Arndt & Van Patten for Plaintiff and Appellant.

Whitman and Ransom, Richard T. Williams and Theodore S. Allison for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—In this case, we conclude a Japanese corporation has the requisite minimum contacts with California to permit the trial court to exercise limited personal jurisdiction over a case alleging misappropriation of trade secrets. The uncontroverted evidence establishes the person who is alleged to have stolen the trade secrets from a California resident was an agent of the Japanese corporation. This establishes the Japanese corporation has the requisite minimum contacts with California to permit the trial court to exercise limited jurisdiction over the case. Accordingly, we reverse the trial court's order quashing the service of the summons and dismissing the Japanese corporation with prejudice.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

Athene is a corporation organized and existing under the laws of Japan. Its principal place of business is Tokyo, Japan. Athene engages in no business or other activities knowingly or purposefully directed toward the United States.

In May 1987, Felix Urbanczyk proposed to Athene in Japan to become a consultant and to offer technical engineering advice concerning the potential manufacture of gimbal assemblies. Urbanczyk represented to Athene that he was free to provide such advice.

Athene entered into a contract with Urbanczyk for the performance of consulting services in Japan, and made payments to Urbanczyk in Japan, in yen. Urbanczyk informed Athene he would purchase various tooling for its use from sources which he would select. Athene was to reimburse Urbanczyk for the costs of purchasing the tooling. Athene has not manufactured or sold any products resulting from any information or tooling which were the subjects of the Urbanczyk contract.

Magnecomp is a California corporation which was incorporated to manufacture gimbal assemblies. Urbanczyk was one of the original shareholders of the corporation. Urbanczyk transferred all his rights and title to certain technology with respect to gimbal assemblies as consideration for shares in Magnecomp. Urbanczyk was elected a director and officer of Magnecomp and served as the vice president of engineering and was in charge of development until his removal from those posts on September 27, 1987.

On or about September 24, 1987, Magnecomp's president, Burkhart, discovered Urbanczyk ordered the manufacture of substantially the same

tooling designed by and manufactured for Magnecomp and the order was destined for delivery to Athene in Japan.

On or about September 25, 1987, Magnecomp sent to Athene a letter declaring it seized certain tooling ordered by Urbanczyk and informed Athene of Magnecomp's claims to the tooling, its design and the procedures employed in the manufacture of gimbal assemblies. The letter also declared Magnecomp's intention to seek legal remedies for any misappropriation of its trade secrets. Magnecomp contacted Athene on or about October 9, 1987, to learn what relationship, if any, existed between Urbanczyk and Athene.

On October 19, 1987, Athene sent a fax letter to Magnecomp stating it had obtained the services of Urbanczyk and his company as a technical advisor and Urbanczyk was authorized to represent Athene in the purchase and procurement of all equipment and tooling.

Accompanying the motion to quash was the declaration of T. Hirano, the president of Athene since November 12, 1987. Hirano declared Urbanczyk drafted the October 19th response and urged Athene's officers, H. Hirano and Sato, to sign it. According to the declaration, Urbanczyk did not explain "the basis of Magnecomp's position with which Athene was not familiar, but stated only that he would take care of Magnecomp's concerns and that such did not and need not involve Athene." Hirano did not deny Urbanczyk's authority to act on Athene's behalf.

On December 14, 1987, Magnecomp filed a complaint with 11 causes of action. Urbanczyk and Athene were the only named defendants in the complaint. Athene was charged in two counts with civil conspiracy to misappropriate the trade secrets of Magnecomp and with misappropriation of trade secrets. The complaint alleges that defendants entered into a conspiracy on or about September 1, 1986.

A temporary restraining order was issued on December 14, 1987, which ordered the defendants to refrain from manufacturing or using Magnecomp's products or tooling and similar restraints.[1]

On January 20, 1988, attorneys representing Athene wrote Magnecomp stating "Athene has authorized us to inform you that Mr. Urbanczyk is not authorized to represent Athene for the purpose of purchasing and/or

---

[1] Magnecomp alleges the parties stipulated to an order pending trial restraining Urbanczyk from transferring certain tooling, designs, drawings, etc. We note this order is not part of the record before us.

procuring equipment on Athene's behalf and is also not authorized to act as Athene's agent for any other purpose."

Athene moved to quash service. After taking the matter under submission, on February 12, 1988, the court issued a minute order granting Athene's motion and found Athene was not doing business in California, had no place of business in California and did not have the requisite minimum contacts with California.

Magnecomp filed a timely notice of appeal.

DISCUSSION

## I. *Standard of Review.*

■ "[W]hen jurisdiction is challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that 'minimum contacts' exist between defendant and the forum state to justify imposition of personal jurisdiction." (*Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703, 710 [215 Cal.Rptr. 442].) "The plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden." (*Ibid.*)

The plaintiff does not have to prove the truth of the allegations constituting the causes of action in order to justify the exercise of jurisdiction over nonresident parties. (169 Cal.App.3d at p. 710.) However, the plaintiff must "present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable 'minimum contacts.'" (*Ibid.*)

■ In reviewing a trial court order pertaining to a motion to quash, we are guided by the following principles: "(1) where a defendant properly moves to quash out of state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence [citations]; (2) evidence of those facts or their absence may be in the form of declarations [citation]; (3) where there is a conflict in the declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination of that court is supported by substantial evidence. [Citations.]" (*Kroopf* v. *Guffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807].)

Substantial evidence is not synonymous with any evidence, but is rather evidence of ponderable legal significance, i.e., evidence which is reasonable in nature, credible, and of solid value. (183 Cal.App.3d at p. 1356.) The

appellate court may not consider evidence not properly before the trial court. (See *Mihon* v. *Superior Court, supra,* 169 Cal.App.3d at p. 710.)

## II. *A Court May Not Exercise Jurisdiction Over a Defendant Who Lacks Minimum Contacts With the Forum State.*

"Section 410.10 of the Code of Civil Procedure provides: 'A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.' ▮ By imposing no limitation except those imposed by constitutional considerations, this section authorizes the broadest possible exercise of judicial jurisdiction." (*Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 302 [118 Cal.Rptr. 548].)

▮ Jurisdiction over a nonresident corporate defendant exists when that defendant has certain "minimum contacts" with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].)

▮ If a nonresident defendant's activities may be described as "extensive or wide-ranging" or "substantial, continuous and systematic," there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him. (*Mihlon* v. *Superior Court, supra,* 169 Cal.App.3d at p. 711.)

" 'If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. . . . ▮ The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction.' " (169 Cal.App.3d at p. 711.)

▮ Here, there is no evidence Athene had regular, continuous and substantial contacts with California such that it would be subject to the general jurisdiction of California courts. We therefore must determine whether the uncontroverted evidence establishes Athene had sufficient minimum contacts with the forum state permitting California to exercise limited personal jurisdiction over Athene.

III. *Urbanczyk Is Athene's Agent for Purposes of Personal Jurisdiction.*

██ California's long-arm statute (Code Civ. Proc., § 410.10) "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations." (*Sklar* v. *Princess Properties International, Ltd.* (1987) 194 Cal.App.3d 1202, 1206 [240 Cal.Rptr. 102].) ██ Accordingly, as we discussed above, the superior court may properly exercise personal jurisdiction over Athene based upon its minimum contacts with California unless to do so would violate "traditional notions of fair play and substantial justice." (*International Shoe Co. v. Washington, supra,* 326 U.S. at p. 316 [90 L.Ed.2d at p. 102]; see *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) We find no such constitutional infirmity.

Since corporations by their nature can only operate through their appointed agents, courts consistently exercise personal jurisdiction over corporations based upon their agents' activities within the forum state. (See, e.g., *Rice Growers Assn.* v. *First National Bank* (1985) 167 Cal.App.3d 559, 569 [214 Cal.Rptr. 468] [agent's forum-related activities imputed to defendant for jurisdictional purposes]; *Northern Natural Gas Co.* v. *Superior Court* (1976) 64 Cal.App.3d 983, 994 [134 Cal.Rptr. 850] ["where a foreign corporation uses a wholly owned subsidiary as a mere agent or instrumentality of the foreign parent corporation, then the state may exercise jurisdiction over the foreign corporation"]; *In re Marriage of Bastian* (1979) 94 Cal.App.3d 483, 487-488 [156 Cal.Rptr. 524] [foreign pension trust subject to jurisdiction where trust, through its agents, injected itself into California]; see Brilmayer & Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency* (1986) 74 Cal.L.Rev. 1, 16-19.)

Urbanczyk's activities within the forum state would be sufficient to confer personal jurisdiction upon Athene provided he was acting as Athene's agent. The allegations of misappropriation of Magnecomp's gimbal assemblies within California alone satisfies the minimum contacts requirement. (See *Kaiser Aetna* v. *Deal* (1978) 86 Cal.App.3d 896, 901 [150 Cal.Rptr. 615] ["A state has a special interest in exercising jurisdiction over those who commit tortious acts within its territory. Therefore, it is reasonable that a state should exercise jurisdiction over those who commit or cause to be committed in the state what is claimed to be a tortious act."]; *Abbott Power Corp.* v. *Overhead Electric Co.* (1976) 60 Cal.App.3d 272, 278-279 [131 Cal.Rptr. 508] [California may properly exercise jurisdiction over an individual whose tortious conduct it seeks to deter]; *Paccar Intern., Inc.* v. *Commercial Bank of Kuwait* (9th Cir. 1985) 757 F.2d 1058, 1064-1065 [under California's long-arm statute and federal due process, a tortious act,

standing alone, is sufficient to find personal jurisdiction if the act is aimed at a resident of the state or has effects in the state]; *National Life of Florida Corp.* v. *Superior Court* (1971) 21 Cal.App.3d 281, 287 [98 Cal.Rptr. 435]; see also Rest.2d Conf. of Laws, § 36, p. 147 ["A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act."]; 13 West's U.Laws Ann. (1986) U.Interstate & International Proc. § 1.3, subd. (a), pp. 361-362 ["A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's . . . (3) causing tortious injury by an act or omission in this state . . . ."]; see generally Annot., Construction and Application of State Statutes or Rules of Court Predicating In Personam Jurisdiction Over Nonresidents or Foreign Corporations on the Commission of a Tort Within the State (1969) 24 A.L.R.3d 532.)

█ The issue, then, is whether Urbanczyk was Athene's agent. █ Ordinarily, the question of agency is one of fact; however, where the evidence is undisputed the issue becomes one of law. (*Mantonya* v. *Bratlie* (1948) 33 Cal.2d 120, 128-129 [199 P.2d 677]; see 9 Witkin, Cal. Procedure (3d ed. 1988) Appeal, § 242, pp. 247-248.)

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295; see *City of Los Angeles* v. *Meyers Bros. Parking Systems, Inc.* (1975) 54 Cal.App.3d 135, 138 [126 Cal.Rptr. 545].) █ Proof of an agency relationship may be established by "evidence of the acts of the parties and their oral and written communications." (*Whittaker* v. *Otto* (1961) 188 Cal.App.2d 619, 622-623 [10 Cal.Rptr. 689]; see *Schlake* v. *McConnell* (1927) 83 Cal.App. 725, 730 [257 P. 175] [agency may be established by principal's statement that third party was his agent and directed to transact business on principal's behalf].)

The evidence establishing the agency relationship here shows Urbanczyk was employed by Athene as its technical advisor. His business card reflected this relationship and listed a Japanese address as Urbanczyk's. A former employee of Urbanczyk's stated Urbanczyk was introduced by the president of Athene to its management as a "partner in Athene Co" and given an Athene company pin which is reserved for Athene management employees. As part of Urbanczyk's plan to provide technical assemblies, he explained to Athene he would purchase gimbal assemblies, the cost of which would be borne by Athene.

█ █ █ █ █ Finally, Athene's president wrote Magnecomp stating: "Mr. Felix Urbanczyk, as Technical Advisor is authorized to

represent Athene Co. Ltd [*sic*] in the [p]urchase and procurement of all Eguipment [*sic*] and Tooling & Engeneering [*sic*] . . . ."[2]

Athene did not contradict this evidence with sworn declarations denying the agency relationship. The only contrary documentation is a letter sent by Athene's attorneys after Magnecomp seized the equipment destined for Japan which states: "Mr. Urbanczyk is not authorized to represent Athene for the purpose of purchasing and/or procuring equipment on Athene's behalf and is also not authorized to act as Athene's agent for any other purpose."

This letter is incompetent to controvert the evidence establishing the agency relationship. First, the letter is not proper evidence because it was not authenticated. (Evid. Code, § 1401; *McAllister* v. *George* (1977) 73 Cal.App.3d 258, 262 [140 Cal.Rptr. 702] ["Authentication of a writing is required before it may be received in evidence."].) Second, there is no evidence the attorney who wrote the letter had personal knowledge concerning Urbanczyk's relationship with Athene. Absent such personal knowledge, his statements are not competent and, therefore, inadmissible. (See Evid. Code, § 702, subd. (a) ["testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter"]; 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1055, p. 1001.) Finally, the letter is inadmissible hearsay.  ▪ ▪▪ ▪ (Evid. Code, § 1200; see *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 79 [98 Cal.Rptr. 501] ["Since the statement in the report can only be based on hearsay, it should be disregarded."].)[3]

▪  In contrast, the letter from Athene to Magnecomp acknowledging the agency relationship does not suffer from these fatal infirmities. The letter was properly authenticated by one of its authors, Mr. Hirano, in a sworn declaration. As the president of Athene and the person who engaged Urbanczyk, Hirano has personal knowledge of Athene's relationship with Urbanczyk. Finally, the letter overcomes any hearsay objection because it is

---

[2] One may argue this evidence only establishes Urbanczyk was an independent contractor. Such a conclusion would not alter the finding of agency. "Agency and independent contractorship are not *necessarily* mutually exclusive legal categories as independent contractor and servant or employee are. In other words, an agent may also be an independent contractor. [Citation.] One who contracts to act on behalf of another and subject to the other's control, except with respect to his physical conduct, is both an agent and an independent contractor." (*City of Los Angeles* v. *Meyers Bros. Parking System, Inc., supra,* 54 Cal.App.3d at p. 138, original italics; accord *Mottola* v. *R. L. Kautz & Co.* (1988) 199 Cal.App.3d 98, 108 [244 Cal.Rptr. 737].) This is the case here.

[3] Although objections to the letter based upon hearsay or authentication may have been waived by Magnecomp's failure to raise them below, objections to a document's competency based upon lack of personal knowledge are not waived by such a failure to object. (See *Zuckerman* v. *Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1404 [232 Cal.Rptr. 458].)

an admission by a party opponent. (See Evid. Code, § 1220; *Stevens* v. *Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877, 887 [123 Cal.Rptr. 171].)

■ Having concluded the uncontroverted evidence establishes Urbanczyk was Athene's agent, we must now determine whether his allegedly tortious conduct may be imputed to Athene. ■ Imputing an agent's knowledge or conduct for purposes of personal jurisdiction is proper where the tortious conduct occurs while the agent is acting within the scope of his authority. (*Northern Natural Gas Co.* v. *Superior Court, supra,* 64 Cal.App.3d at p. 994 [personal jurisdiction properly exercised over defendant based upon fraudulent conduct of agent which occurred while the agent was acting within the scope of its authority].)

■ Provided the agent acted within the scope of his authority, it is irrelevant whether the principal knew or had reason to know its agent was acting tortiously. As the court stated in *Powell* v. *Goldsmith* (1984) 152 Cal.App.3d 746, 751 [199 Cal.Rptr. 554], "Appellants state they relied completely on 'the honesty and integrity' of [their agent]. Their reliance and trust was misplaced. A principal cannot benefit from the fraud of its agents who is acting in the course and scope of his agency."

■ Here, the uncontroverted facts establish Urbanczyk acted within the scope of his authority and with Athene's tacit, if not express, consent. Hirano, in his declaration, states Urbanczyk informed him he would acquire gimbal assemblies for Athene. When Athene learned of the problem with Urbanczyk's acquisition of Magnecomp's gimbal assemblies, it still represented to Magnecomp that Urbanczyk acted as Athene's agent. Accordingly, we find Urbanzcyk's conduct may be imputed to Athene for purposes of finding personal jurisdiction.[4]

Indeed, to reject personal jurisdiction under these facts would suggest a foreign corporation could continually avoid liability for its tortious conduct against California residents by merely acting through its agents. A plaintiff would be unable to establish the requisite minimum contacts provided the foreign corporation knew enough to refuse to acknowledge the tortious acts were committed with its knowledge.

Further, for courts to refuse jurisdiction in these cases, would subject our citizens to the predatory tactics of foreign corporations without providing

---

[4]There can be no doubt Athene benefited from the consulting agreement with Urbanczyk since it received his expertise concerning Magnecomp's gimbal assemblies. Further, had Magnecomp not acted promptly in seizing the assemblies destined from Japan, Athene would have benefited further from Urbanczyk's alleged misappropriation.

them with any opportunity for redress. ■ To paraphrase the court in *Northern Natural Gas Co.* v. *Superior Court, supra,* 64 Cal.App.3d 983, where tortious acts are committed against California citizens, we should liberally construe and interpret jurisdictional principles to accomplish sub- stantial justice for California citizens. (*Id.* at p. 995.)

■ In sum, the uncontroverted evidence shows Urbanczyk was engaged as Athene's agent to provide technical advice concerning gimbal assemblies, and as its agent Urbanczyk entered California where he allegedly misappropriated a California corporation's trade secrets. We therefore hold there are sufficient minimum contacts within California to confer personal jurisdiction over Athene.

## IV. *It Is Reasonable to Exercise Jurisdiction Over Athene.*

■ "Once it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this activity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction." (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57].)

"The considerations pertaining to the convenient forum include, inter alia, the interest of the state in providing a forum to its residents; the choice of law; the relative availability of evidence; the ease of access to an alternative forum; the avoidance of the multiplicity of suits and conflicting adjudications; and inconvenience to the defendant to defend himself in the local forum." (*Rice Growers Assn.* v. *First National Bank, supra,* 167 Cal.App.3d at p. 579; see *Brown* v. *Watson* (1989) 207 Cal.App.3d 1306, 1315 [255 Cal.Rptr. 507].) ■ Each of these factors militates towards California as the appropriate forum.

First, California has manifested a strong interest in providing a forum to its residents for causes of action arising from misappropriation of trade secrets by its enactment of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.). (See Pooley, *Better Protection for Trade Secrets* (1985) 5 Cal.Law. 51 [California's Uniform Trade Secrets Act is "intended to provide more certain protection for valuable business information"]; Comment, *The Secret's Out: California's Adoption of the Uniform Trade Secrets Act— Effects on the Employer-Employee Relationship* (1987) 20 Loyola L.A. L.Rev. 1167, 1197-1198.)

Second, assuming a choice of law problem exists between California and Japan, California's Uniform Trade Secrets Act would apply. "California choice of law rules rest on an analysis of the respective interests of the states or countries involved; the so-called 'governmental interest' approach, the objective of which is ' "to determine the law that most appropriately applies to the issue involved." [Citation.]' " (*Corrigan* v. *Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 179 [227 Cal.Rptr. 247].) Since Japan has little, if any, interest in protecting the trade secrets of California, contrasted to California's strong interest in protecting its resident businesses from trade secret thefts, under the governmental interest approach California law would apply. (See *American Bank of Commerce* v. *Corondoni* (1985) 169 Cal.App.3d 368, 372 [215 Cal.Rptr. 331] ["If the interests of foreign state will not be significantly furthered by applying its law, the California court must . . . apply California law."].)

Third, it appears much of the evidence and testimony revolves around actions taken within California. The only percipient witness outside of this forum apparently is Athene's president Hirano. Thus, California is more appropriate for purposes of availability of evidence.

Fourth, it is unlikely Japan is a more accessible forum than California given Japan's relatively little interest in protecting California trade secrets or providing foreign plaintiffs a forum to litigate against a resident defendant.

Fifth, excluding Athene from the action in California will result in a multiplicity of suits since Magnecomp will be forced to litigate separate actions in California and Japan as it proceeds against Athene and Urbanczyk. (See *Abbott Power Corp.* v. *Overhead Electric Co., supra,* 60 Cal.App.3d at p. 281.)

Finally, while it may prove inconvenient for Athene to litigate this action in California rather than Japan, "the same technological progress in communication and transportation that has increased the flow of commerce between the states and the need for jurisdiction over nonresidents, has simultaneously decreased the burdens inherent in defending a lawsuit in a foreign tribunal." (*Rice Growers Assn.* v. *First National Bank, supra,* 167 Cal.App.3d at p. 580.)

Based upon all of these factors, we conclude it is fair and reasonable to require Athene to defend against this action in California. We therefore reverse the trial court's order quashing service of summons.

## DISPOSITION

The judgment is reversed. Appellant is to recover its costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied May 2, 1989, and respondent's petition for review by the Supreme Court was denied June 29, 1989.