Filed 5/27/16  Gleaming International Co. Ltd. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GLEAMING INTERNATIONAL COMPANY LIMITED, et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA<br><br>    Respondent,<br><br>SUNMING CHEUNG, as Administrator, etc.<br><br>    Real Party in Interest. | No. H042123<br>(Santa Clara<br> Super. Ct. No. 1-14-CV-272501) |

The six petitioners in this original proceeding are defendants in an action brought by real party in interest Sunming Cheung.  Five of these defendants, who live outside the United States, unsuccessfully moved to quash service of summons for lack of personal jurisdiction over them.  In their petition for a writ of mandate or prohibition, defendants contend that the court erred in finding sufficient contacts with California to justify the assumption of personal jurisdiction over the five foreign defendants.  We conclude that jurisdiction was proper as to all but two of the defendants and will therefore grant writ relief limited to those two.

*Background*

The underlying subject of the parties' dispute is a residence located in Los Altos. Defendants are three adult children and one grandchild of Peter Chi Yu Chang (Peter) and two foreign corporations, Gleaming International Company (GIC) and Pacific Grace Limited (PGL). In July of 1978, Peter purchased the property as an "ancestral" home for his family. He first created GIC to hold title and issued stock to his wife and four children. The 10,000 total shares in GIC were issued as follows: 20 percent (2,000 shares) to Peter; 20 percent (2,000 shares) to Peter's wife, Yao Liang Chang; 15 percent (1,500 shares) to his son Paul Chu Kong Chang (Paul); 15 percent (1,500 shares) to his daughter Helen Yung Chang (Helen); 15 percent (1,500 shares) to his daughter Lilian Wai Chang (Lilian); and 15 percent (1,500 shares) to his son Lincoln Chu Shing Chang (Lincoln).

From the July 1978 purchase to 1984 Helen and her husband, real party in interest Sunming Cheung (hereafter, Sunming), lived in the Los Altos residence and paid the mortgage, taxes, and maintenance expenses on the property. Peter and his grandchildren would spend a month there during each summer until his death in 1987. Through his will Peter granted 20 percent "of the estate" pertaining to the Los Altos property to his eldest grandson, Chris Chang Chao Yuan (Chris).

In 1984, when Helen and Sunming purchased another home, Lincoln moved into the Los Altos residence and continued to live there with his family throughout the subsequent proceedings. Helen was a director of GIC along with Paul and their mother. In 1998 Helen died, leaving her interest in the Los Altos residence to Sunming as the administrator of her estate and trustee of the Helen Yung Chang Revocable Trust. According to Sunming's complaint, in July 1999 Lilian removed Helen as director of GIC, and in December that year she replaced the remaining directors with herself and her husband, Donald U Dong Woo (Donald).

2

Sunming further alleged that in 1999 Lilian and Donald transferred all of the 6,500 shares (65 percent) held by Lilian, Yao, Paul, and Lincoln—that is, all except Peter's and Helen's shares—to PGL, a British Virgin Islands corporation. PGL has its principal place of business in Hong Kong, and Lilian is its sole director. In 2002, Lilian purported to transfer Helen's 1,500 shares in GIC to herself individually and to transfer Chris's 20 percent interest in the residence to PGL. Both transfers, Sunming alleged, were "illegal, unauthorized, without consideration[,] and fraudulent." Thus, as of 2002 Lilian controlled 8,500 shares (85 percent) of GIC through PGL besides individually controlling the 1,500 shares she had obtained from Helen.

It was only in 2014 that Sunming discovered Lilian's appropriation of Helen's shares. In January of that year Lilian and Lincoln mentioned that they were considering selling the Los Altos residence. Sunming thereafter discovered the transfer in the annual GIC filings with the Hong Kong government, and, according to the complaint, Lilian "denied that [Helen] (and thus her heirs) had any right to the shares of the Residence." On the contrary, Sunming believed, Lilian "intended to sell the Residence and keep the entire proceeds for herself individually and for PGL . . . and distribute no proceeds of any future sale to them."

Sunming filed the instant litigation in Santa Clara County Superior Court, alleging breach by Lilian and Donald of their fiduciary duty (though Donald was not specifically named as a defendant) and conversion of Helen's interest in GIC and the residence. Sunming also asserted claims for declaratory relief, imposition of a constructive trust, quiet title, and injunctive relief to restore Helen's interest in GIC and the residence and to prevent any transfer of the residence. Plaintiff named four family members as defendants: Lilian, a Hong Kong resident; Paul, a resident of Ontario, Canada; Chris, Paul's son and a resident of Ontario, Canada; and Lincoln, a resident of Santa Clara County. Sunming also named the two foreign corporations, GIC and PGL.

The foreign defendants (i.e., all defendants except Lincoln) collectively filed a motion to quash service of summons on the ground that plaintiff could not show that defendants had sufficient minimum contacts for the court to exercise personal jurisdiction since none of the foreign defendants resided or did business in California. Alternatively, the foreign defendants sought to dismiss the action based on the forum non conveniens doctrine. Concurrently with the filing of the motion to quash, the one local defendant, Lincoln, moved for judgment on the pleadings, asserting that if the court granted the foreign defendants' motion, then the court should grant him judgment on the pleadings because necessary and indispensable parties would no longer be in the action.

Sunming opposed the motion to quash and Lincoln's motion for judgment on the pleadings. Sunming argued that the court had specific personal jurisdiction over the foreign defendants because the center of the dispute was the real property in Santa Clara County, of which defendants had asserted ownership and control.

The court denied the motion to quash and the motion to dismiss the action based on forum non conveniens. Addressing the first motion, the court reasoned that all of the defendants had asserted an interest in the California residence, "whether through GIC or directly." The court agreed with Sunming that GIC was only "a shell entity created for the sole purpose of holding title to the Residence," and which had not been shown to do any business. That fact was significant in rebutting defendants' assertion that the dispute concerned only ownership in GIC, not interests in the residence. In addition, plaintiff's evidence indicated that defendants had directed "tortious activities towar[d] California" that "aim[ed] to harm [Sunming] in California with respect to his interest in the Residence." Thus, the evidence established that the foreign defendants had purposely availed themselves of this state's forum benefits, and they had presented "virtually no evidence" that would make the court's assumption of jurisdiction unreasonable. The court also denied Lincoln's motion for judgment on the pleadings as to all but the third cause of action.

4

Defendants then filed the instant petition for a writ of mandamus or prohibition to overturn the court's order. On March 21, 2016, having obtained preliminary opposition from Sunming and a reply from defendants, we issued an order to show cause directed only at the order denying the motion to quash, while denying the petition in all other respects.[1] Sunming did not file a return.

*Discussion*

1. *Legal Framework*

California's long-arm statute, Code of Civil Procedure section 410.10, provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." As the California Supreme Court has explained, "[a] state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' " 'traditional notions of fair play and substantial justice." ' " (*Vons Companies*, *Inc. v. Seabest Foods*, *Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*), quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

"[T]he minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that is "reasonable" and "fair" to require him [or her] to conduct his [or her] defense in that State.' [Citations.]" (*Snowney v. Harrah's Entertainment*, *Inc.*, (2005) 35 Cal.4th 1054, 1061 (*Snowney*).) The test " 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' [Citations.]" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).) Thus, whether a

---

[1] The superior court's ruling on forum non conveniens is not challenged in this proceeding, and this court's order to show cause did not encompass the ruling on Lincoln's motion for judgment on the pleadings.

5

nonresident defendant has minimum contacts with California such that the exercise of personal jurisdiction comports with due process is determined on a case-by-case basis. (*Snowney*, *supra*, at p. 1061.) "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State . . . or on the 'unilateral activity' of a plaintiff." (*Walden v. Fiore* (2014) 134 S.Ct. 1115, 1123 (*Walden*).)

Although the property at the center of this dispute is located in California, the same minimum contacts test applies to actions that are in rem or quasi in rem. (*Shaffer v. Heitner* (1977) 433 U.S. 186, 207 (*Shaffer*).) "[I]n order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' " (*Ibid*.)

"Personal jurisdiction may be either general or specific. A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.' [Citations.]" (*Vons*, *supra*, 14 Cal.4th at p. 445.) "If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum." (*Id*. at p. 446.)

Specific jurisdiction, which is at issue in this case, is determined by examining "the relationship among the defendant, the forum, and the litigation." (*Shaffer*, *supra*, 433 U.S. at p. 204; *Walden*, *supra*, 134 S.Ct. at p. 1121.) As recently described by the United States Supreme Court, for a state to exercise specific jurisdiction over a nonresident defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State." (*Walden*, *supra*, at p. 1121.) "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Id*. at p. 1125.) "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it

6

is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him." (*Id.* at p. 1122.) Thus, in order to establish minimum contacts, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State . . . , not the defendant's contacts with persons who reside there." (*Ibid.*)

"A court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citations]; and (3) ' "the assertion of personal jurisdiction would comport with 'fair play and substantial justice' " ' [citations]." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Snowney*, *supra*, 35 Cal.4th at p. 1062.)

The parties' respective burdens in addressing specific jurisdiction are well established. The plaintiff "has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons*, *supra*, 14 Cal.4th at p. 449; *Snowney*, *supra*, 35 Cal.4th at p. 1062; *Pavlovich*, *supra*, 29 Cal.4th at p. 273.)

*2. Defendants' Contacts with California*

In determining whether specific jurisdiction is applicable to defendants, we first consider whether defendants have purposefully availed themselves of forum benefits. The California Supreme Court has described five circumstances that indicate purposeful availment by a nonresident defendant: (1) purposefully directing his or her activities at residents of the forum state; (2) purposefully deriving benefits from his or her activities in

7

the forum; (3) creating a substantial connection with the forum; (4) deliberately engaging in significant activities within the forum state; or (5) creating continuing obligations between himself or herself and residents of the forum state.  (*Snowney*, *supra*, 35 Cal.4th at p. 1063.)

In Sunming's view, the key to jurisdiction over all of the foreign defendants is the substantial connection afforded by owning property in Los Altos.  Sunming cites *Shaffer*, *supra*, 433 U.S. at p. 207, where the United States Supreme Court considered the application of " 'fair play and substantial justice' " to interests in rem.  The high court acknowledged that "the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation.  For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction.  In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.  The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State.  The presence of property may also favor jurisdiction in cases such as suits for injury suffered on the land of an absentee owner, where the defendant's ownership of the property is conceded but the cause of action is otherwise related to rights and duties growing out of that ownership." (*Id*. at p. 207-208, fns. omitted.)

It is clear to this court that the superior court has properly asserted specific personal jurisdiction over GIC, the title holder to the Los Altos property; PGL, the holder of 8,500 shares of GIC; Lilian, who controls PGL and (with her husband) GIC, and who allegedly transferred Helen's 1,500 shares of GIC to herself; and Lincoln, who has not disputed jurisdiction over him.  Contrary to defendants' oversimplified depiction of the

8

issues, this case is not simply about interests of shareholders in a corporation unrelated to ownership of California property. The allegations of the complaint are directed at Lilian's breach of fiduciary duty and conversion by wrongfully transferring Helen's legal interests in a corporate shell, which served only to hold title to California property for the benefit of the family. PGL is further subject to jurisdiction in California through its agent, Lilian. (Cf. *Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 539 [agent's tortious conduct may be imputed to corporation for purposes of jurisdiction over corporation].) Thus, there is a substantial connection between these defendants and California. Moreover, the controversy arises out of those contacts, and in light of the alleged conduct by them, the assertion of personal jurisdiction would comport with fair play and substantial justice. Jurisdiction is therefore properly assumed over both corporations, Lilian, and Lincoln.

As to Paul and Chris, however, Sunming has presented no evidence that either of these Canadian residents has retained or even asserts any active interest in either GIC or the Los Altos property. Paul's shares in GIC have been transferred to PGL under Lilian's control, as has Chris's purported 20 percent interest in the residence. Whether voluntarily divested or misappropriated, these interests apparently no longer bring Paul and Chris within reach of California's long-arm statute. We therefore conclude that the motion to quash should have been granted as to Paul and Chris.

### *Disposition*

Let a peremptory writ of mandate issue directing respondent court to vacate its March 9, 2015 order denying the motion to quash and to enter a new order which (1) grants the motion as to Paul Chu Kong Chang and Chris Chang Chao Yuan and (2) denies the motion as to the remaining foreign defendants. The parties shall bear their own costs.

9

_____

ELIA, ACTING P.J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, J.

_____

MIHARA, J.