[Civ. No. 3176. Fifth Dist. Dec. 17, 1976.]

NORTHERN NATURAL GAS COMPANY OF
OMAHA, NEBRASKA, et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
NED S. VAN DUYNE, Real Party in Interest.

---

**COUNSEL**

McCormick, Barstow, Sheppard, Coyle & Wayte and Michael W. Case for Petitioners.

No appearance for Respondent.

Kelly, Leal & Olimpia and Stanley F. Leal for Real Party in Interest.

## OPINION

**LORING, J.**[*]—Northern Natural Gas Company of Omaha, Nebraska, a Delaware corporation (Natural Gas) and Northern Propane Gas Company of Minneapolis, Minnesota, a Delaware corporation (Propane Gas) were sued as defendants in respondent court in an action filed by Ned S. Van Duyne, (Van Duyne), real party in interest. Natural Gas and Propane Gas filed motions to quash service of summons on the ground that they were foreign corporations not engaged directly or indirectly in business in the State of California and not otherwise subject to the jurisdiction of California. The motions were opposed by Van Duyne and were denied by respondent court. Natural Gas and Propane Gas sought relief through mandamus. We granted an order to show cause.

We conclude that respondent court correctly denied the motion of Propane Gas to quash service of summons, but erroneously denied the motion of Natural Gas to quash service of summons. A peremptory writ will be issued accordingly.

The affidavits in connection with the motion before respondent court *disclosed the following facts with reference to petitioners Natural Gas and Propane Gas:*

### FACTS ABOUT NATURAL GAS COMPANY

F. Vincent Roach, vice president and general counsel of Natural Gas made an affidavit filed in respondent court in which he stated that Natural Gas is a Delaware corporation with offices in Omaha, Nebraska. It transacts business in certain midwestern and southwestern states, the business consisting of the operation of a 19,990-mile natural gas pipeline system in 12 states (excluding California), for the distribution of natural gas to 74 utility customers in 1,094 communities with a population of 5.9 million. These communities are located in 11 states in the upper midwest. Natural Gas's retail distribution system sells natural gas to residential, commercial, industrial and agricultural customers in eight states (excluding California). ▆▆ The affidavit alleges that the corporation is not qualified to

[*]Assigned by the Chairman of the Judicial Council.

do business in the State of California[1] and does not engage in business activities, maintain an office or offices, maintain books and records, own real property, own tangible personal property, manufacture products, perform services, make sales of goods, maintain a stock of goods, have full or part time salesmen or sales agents offering its products for sale, or conduct activities as a member of a partnership, joint venture or limited partnership, in the State of California.

### FACTS ABOUT PROPANE GAS COMPANY

Gale M. Colburn, vice president of Propane Gas filed an affidavit in respondent court in which he stated that Propane Gas is a Delaware corporation. It has offices in Minneapolis, Minnesota, and transacts business in 21 midwestern and eastern states, the business consisting of the operation of 283 retail and bulk plant propane operations. It serves 265,000 customers in the midwest and eastern United States under the name "Norgas" and it is primarily a retail seller of propane gas with wholesale propane gas purchase and sales operations. Associated appliances are also marketed by the corporation at its retail outlets. It employs approximately 1,600 people throughout its area of service. The affidavit alleged that the corporation is not qualified to do business in the State of California and does not maintain an office or offices, maintain books and records, own real property, own tangible or intangible property, manufacture products, perform services, make sales of goods, maintain a stock of goods, have full or part time salesmen or sales agents, or conduct activities as a member of a partnership, joint venture or limited partnership, in the State of California.

The lawsuit pending before respondent court arose out of a "license agreement" between Van Duyne and Geni-Chlor International, Inc., a Delaware corporation (Geni-Chlor) dated April 12, 1974, which Van Duyne claimed had been breached to his damage. Van Duyne also alleged a cause of action for fraud against the defendants. The corporate

---

[1]Natural Gas was qualified to do business in California during the period of April 22, 1966 to December 18, 1973. However, service of process was made sometime after March 26, 1976. Under California Corporations Code section 6504, where a foreign corporation is engaged solely in *interstate* business, if it ceases to do business before service, the corporation can avoid suit in this state. (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 110, p. 641; *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556 [39 Cal.Rptr. 626].) In the present case, there is no allegation of any *intrastate* business by Natural Gas in California at any time. Therefore, once Natural Gas filed its certificate of surrender on December 18, 1973, it was no longer subject to the jurisdiction of California courts based on its "doing business" in California.

identity of Geni-Chlor as disclosed by such affidavits in support of the motion and in opposition of the motion may be briefly summarized as follows:

## FACTS ABOUT GENI-CHLOR

The forerunner of Geni-Chlor was S. K. & A. Development Corporation. In 1970, Mr. Dan Tucker purchased S. K. & A. and commenced work to manufacture and market pool chlorination devices. Mr. Tucker's intention was to develop a pool purifier/chlorination unit operating on a principle of electrolysis. After a period of testing, Mr. Tucker became satisfied with the unit and in early 1972 began to market the unit in the Concord, California area through Damoto Products, Incorporated. Also in 1972, S. K. & A. became associated with International Consolidated Industries of Oakland, California, for the purpose of developing a national marketing program.

On December 18, 1972, Geni-Chlor was formed under the laws of Delaware. On January 4, 1973, Geni-Chlor acquired the assets of S. K. & A. Geni-Chlor maintains offices and a manufacturing plant in Concord, California, and has a designated agent to receive service of process in California.

Geni-Chlor is a subsidiary of Propane Gas, which in turn is a wholly owned subsidiary of Natural Gas.[2]

Darwin A. Larson is both president of Propane Gas and the president and chairman of the board of Geni-Chlor. Stephen Sulentic and Calvin Forbes are both directors of Geni-Chlor and officers of Propane Gas. Mr. Sulentic is also a director of Propane Gas.

In a bulletin entitled "The Geni-Chlor Story," issued by Geni-Chlor to its distributors, the distributors were informed that Geni-Chlor and Propane Gas had in 1972 entered into a joint venture agreement to build and market the Geni-Chlor pool purifier. Propane Gas was already a

---

[2]A "subsidiary corporation" is defined in California Corporations Code section 118:
"If a corporation, domestic or foreign, has power either directly or indirectly or through another corporation or series of other corporations, domestic or foreign, to elect a majority of the directors of another corporation, domestic or foreign, any of the corporations having controlling power is a 'holding corporation' in its relation to any corporation which it so controls, and any corporation which is subject to such control is a 'subsidiary' corporation in its relation to any such controlling corporation."

distributor of Geni-Chlor, marketing Geni-Chlor pool purifiers on the west coast of Florida.

Also in the bulletin entitled "The Geni-Chlor Story," reference was made to Natural Gas and its financial position and that of its subsidiaries, including the fact that Natural Gas was traded on the New York Stock Exchange.

In another bulletin entitled "Selling the Company," it is stated that on December 18, 1969, Geni-Chlor became associated with Propane Gas, a wholly owned subsidiary of Natural Gas. Also, in November of 1974, Propane Gas bought controlling interest in Geni-Chlor. The same bulletin gives the following model question and answer from a sales training manual circulated among Geni-Chlor distributors:

" 'Objection No. 6: How do I know your company [Geni-Chlor] will be around when a part goes bad?

" 'Answer: . . . First, let me reemphasis [*sic*] the credibility of Northern Natural Gas. This company has been in business for many years. I think it is quite safe to state that they are going to be around for a good many more years.

" 'As far as Geni-Chlor International is concerned, they have been operating successfully for about 5 years, and of course, they are owned by Northern Natural Gas.' "

In his affidavit in opposition to the motion Van Duyne stated:

"Employees of Geni-Chlor International, Inc., including J. Michael Walker who is vice president and general manager of Geni-Chlor and a member of the board of directors of Geni-Chlor, induced me to enter into the licensing contract attached to my complaint by informing me that Geni-Chlor International and Northern Propane Gas Company had in 1972 entered into a joint venture agreement to both build and market the Geni-Chlor pool purifier. That as of this time (April, 1974) Northern Propane Gas Company held an option to purchase virtually all of the Geni-Chlor stock; that the defendant Northern Gas Company was standing behind Geni-Chlor; that the Northern Natural Gas companies were large and financially solvent companies listed on the New York Stock Exchange and that as a licensee with Geni-Chlor, I could rely

upon the money and prestige of the Northern Gas companies. At this time and in this regard, I was supplied with the Geni-Chlor Story, which is marked Exhibit A and attached hereto and incorporated herein.

"The consolidated financial position of Northern Natural Gas and its subsidiary companies, referred to in the 'Geni-Chlor Story,' were also supplied to me at this time so that I might appreciate the significant financial backing upon which I might expect to rely. The attached 'Geni-Chlor Story' also makes reference to the joint venture relationship between Geni-Chlor International and Northern Propane Gas Company."

At another point in his affidavit, Van Duyne stated:

"At many sales meetings I was advised, as were other licensees in California to establish 'credibility' of the product by making people aware of the financial position, status and 'credibility' of Northern Propane Gas Company and of Northern Natural Gas Company. This advice was received by me from employees of Geni-Chlor who were operating under the direction and control of Mr. Lars Larson, who at all times was president of Geni-Chlor, chairman of its board of directors and also president of Northern Propane Gas Company.

"Northern Propane Gas Company was thereby aware of the inducements and representations made as to its responsibility for the product sold by its subsidiary."

A bulletin from Geni-Chlor instructs its distributors not to associate the Geni-Chlor name with Propane Gas or Natural Gas in their *marketing* programs. Any such advertising was not to be made without the written authorization of Geni-Chlor who, in turn, was to have the written permission of Natural Gas. However, the distributors were also informed that Geni-Chlor was working with Propane Gas and Natural Gas to establish such an advertising policy, and that they would be notified when Geni-Chlor received authorization.

The allegations of the Van Duyne affidavit were not specifically denied.

## DISCUSSION

The propriety of the denial of the motion to quash service of summons is readily disposed of insofar as Natural Gas is concerned. Natural Gas,

a foreign corporation not engaged in business in California, was at most only a parent of Propane Gas, its wholly owned subsidiary. Regardless of whether or not Propane Gas was subject to the jurisdiction of California, it is clear that Natural Gas was not merely because Propane Gas was its wholly owned subsidiary. ■ It is well established that jurisdiction of a wholly owned subsidiary does not give a court jurisdiction of the parent corporation. (*Watson's Quality Turkey Products, Inc.* v. *Superior Court* (1974) 37 Cal.App.3d 360, 364 [112 Cal.Rptr. 345]; *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 274 [131 Cal.Rptr. 231, 551 P.2d 847]; *Cannon Mfg. Co.* v. *Cudahy Packing Co.* (1925) 267 U.S. 333, 336-338 [69 L.Ed. 634, 642-643, 45 S.Ct. 250]; 1 Witkin, Cal. Procedure (2d ed. 1970)·Jurisdiction, § 106, pp. 636-637; Code Civ. Proc., § 410.10 (com.); Rest.2d Conf. of Laws, § 52, com. b.)

■ A parent corporation is not liable on the contract or for the tortious acts of its subsidiary simply because it is a wholly owned subsidiary. Some other basis of liability must be established. *"Stock ownership alone is not enough."* (6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 11, p. 4323 (italics in original).)

■ Natural Gas therefore was not subject to the jurisdiction of California courts solely by reason of the fact that Propane Gas was its wholly owned subsidiary. We can find no other basis for jurisdiction. The trial court therefore committed error in refusing to grant the motion of Natural Gas to quash service of summons. A peremptory writ will therefore issue as to Natural Gas.

■ The motion of Propane Gas to quash service of summons presents a different problem. There was uncontradicted evidence before the trial court that Geni-Chlor had been specially organized to carry out a joint venture association with Propane Gas. In his affidavit in opposition to the motion of Propane Gas to quash service of summons, Van Duyne stated: "Employees of Geni-Chlor International, Inc., including J. Michael Walker who was vice president and general manager of Geni-Chlor and a member of the board of directors of Geni-Chlor induced me to enter into the licensing contract attached to my complaint by informing me that Geni-Chlor International and Northern Propane Gas Company had, in 1972, *entered into a joint venture agreement* to both build and market the Geni-Chlor pool purifier." (Italics ours.)

Bearing in mind the contents of the document entitled "The Geni-Chlor Story" and the fact that Darwin A. Larson, the president and chairman of the board of Geni-Chlor was also the president of Propane Gas, the trial court was entitled to conclude that Propane Gas was aware of the representations by Geni-Chlor, particularly where the contents of the affidavit of Van Duyne were not denied at the time of the hearing on the motion of Propane Gas to quash service of summons.

Petitioners argue that the statement in Van Duyne's affidavit: "Northern Propane Gas Company was thereby aware of the inducements and representations made as to its responsibility for the product sold by its subsidiary" is pure speculation by Van Duyne not supported by competent evidence. Petitioners make a like argument regarding statements in Van Duyne's affidavit that Geni-Chlor did various acts with "the obvious approval of the parent corporation." These arguments by petitioners disregard the legal principle of imputed knowledge.

Under the doctrine of imputed knowledge, Larson, as president and chairman of the board of Geni-Chlor, was chargeable with knowledge of the statements, representations, acts and conduct of the employees of Geni-Chlor. In 1 Witkin, Summary of California Law (8th ed. 1973) Agency and Employment, section 139, page 743, this elemental rule is stated as follows:

■ "An agent is under a duty to inform his principal of matters in connection with the agency which the principal would desire to know about. (Rest.2d, Agency § 381.) Even if he fails to do so, the principal will in most cases be charged with such notice. 'As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.' (C.C. 2332; see Rest.2d, Agency §§ 268, 272, 275, and Appendix, Rep. Notes, pp. 441, 446, 454, 461, 471, 475; *Davis* v. *Local No. 11, Int. Brotherhood, etc.* (1971) 16 Cal.App.3d 686, 695, 94 C.R. 562; *Capron* v. *California* (1966) 247 Cal.App.2d 212, 231, 55 C.R. 330; BAJI (5th ed.) No. 8.21 [knowledge of defective or dangerous condition of premises]; 4 A.L.R.3d 224 [imputation where agent acts for both parties to transaction]; 3 Am.Jur.2d, Agency § 273 et seq.)

"The court in *Columbia Pictures Corp.* v. *DeToth* (1948) 87 Cal.App.2d 620, 630, 197 P.2d 580, explained the doctrine of imputed knowledge as follows: 'The fact that the knowledge acquired by the agent was not

actually communicated to the principal . . . does not prevent operation of the rule. . . . The agent may have been guilty of a breach of duty to his principal, yet the knowledge has the same effect as to third persons as though his duty had been faithfully performed. The agent acting within the scope of his authority, is, as to the matters existing therein during the course of the agency, the principal himself. . . . This rule of law is not a rebuttable presumption. It is not a presumption at all.' "

Inasmuch as Larson was president and chairman of the board of Geni-Chlor and also president of Propane Gas, we think that Propane Gas was also chargeable with the same imputed knowledge that Larson was chargeable with as president of Geni-Chlor. It is well established that the doctrine of imputed knowledge applies in the relationship of principal and subagent where the latter's employment by the agent is authorized or ratified. (*Trane Co.* v. *Gilbert* (1968) 267 Cal.App.2d 720, 727 [73 Cal.Rptr. 279].)

It would be unreasonable for the trial court to conclude that Larson as president of Geni-Chlor was chargeable with imputed knowledge of representations made by employees of Geni-Chlor to Van Duyne, but that Larson as president of Propane Gas had no such knowledge. The trial court had a right to conclude that Propane Gas as stockholder of Geni-Chlor elected Larson president of Geni-Chlor so that Larson as president of Propane Gas would be fully aware of what its wholly owned subsidiary was doing.

In view of the affidavit of Van Duyne and the other evidence in the case, the trial court could properly conclude therefore that Propane Gas organized and used Geni-Chlor as an instrumentality or agent to carry out a joint venture agreement in which Propane Gas was one of the joint venturers. The representations which Geni-Chlor made with imputed knowledge and consent of its president and chairman of its board of directors Darwin A. Larson, and therefore with the imputed knowledge and consent of Propane Gas of which Larson was also president, was tantamount to a representation that Propane Gas would be liable for Geni-Chlor's debts which it would be as a matter of law if there was a joint venture agreement as alleged in the uncontradicted declarations of Van Duyne. We hold that that conclusion was legally permissible by the trial court where the Van Duyne affidavit was not contradicted. If the statements were untrue, Propane Gas at least had a duty to file a contradicting affidavit.

■ The principle is well established that where a foreign corporation uses a wholly owned subsidiary as a mere agent or instrumentality of the foreign parent corporation, then the state may exercise jurisdiction over the foreign corporation. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 11, p. 4323.) ■ Agency and alter ego are two different and distinct concepts. In the case of an alter ego, the court pierces the corporate veil. In the case of an agency the corporate identity is preserved but the principal is held liable for the acts of its agent. ■ Here, in view of the fact that Larson was the president of Propane Gas and president and chairman of the board of Geni-Chlor, the court was justified in holding Propane Gas responsible for the declarations by Geni-Chlor that it had been formed to carry out a joint venture relationship with Propane Gas especially where Propane Gas has not seen fit to deny the allegations. Gale M. Colburn, vice president of Propane Gas, filed an affidavit which as a conclusion of law stated inter alia that Propane Gas was not a member of a partnership joint venture or limited partnership in California, but the specific declarations of Van Duyne in his affidavits were not denied. As a conclusion of law, the court was entitled to disregard the Colburn statement. At most, Colburn's affidavit merely created a conflict in the evidence which was impliedly resolved against Propane Gas by the trial court. The detailed statements by Van Duyne supported by some documentary evidence are certainly more persuasive than the legal conclusion by Colburn. We are bound by the trial court's implied resolution of this conflict in favor of the real party in interest where there was evidence to support it which there was.

It is likewise true that Geni-Chlor issued a bulletin to its distributors not to associate the name of Geni-Chlor with Propane Gas or Natural Gas in *marketing* operations. Since the bulletin refers to marketing operations, the trial court had a right to interpret this bulletin as relating to the relationship between Geni-Chlor and the general public. By its own terms it did not relate to the relationship between Geni-Chlor and Geni-Chlor's distributors such as Van Duyne. Even interpreting the bulletin in the light most favorable to Propane Gas merely creates a conflict in the evidence which was resolved against Propane Gas.

■ The doctrine of imputed knowledge does not apply to Natural Gas because there is no comparable showing that the president of Natural Gas was the president of Propane Gas. In any event, even Van Duyne does not claim that anybody represented to him that Natural Gas was a party to any joint venture relationship with Geni-Chlor.

■ We note also that in the case at bar, Van Duyne complains that Geni-Chlor perpetrated a fraud on California citizens and that Geni-Chlor submitted to an injunction in a proceeding instituted by the district attorney enjoining certain alleged fraudulent conduct and false representations. Obviously such issue is not before us on the merits and we express no opinion other than to note that fraud was an issue in the case before respondent court. In *Empire Steel Corp.* v. *Superior Court* (1961) 56 Cal.2d 823, 833 [17 Cal.Rptr. 150, 366 P.2d 502], the court said:

"Such [fraudulent] conduct allegedly resulting in harm to persons doing business in this state may be considered as a factor to be weighed in determining whether Empire is subject to jurisdiction in the pending action. . . ."

"Furthermore, this jurisdiction has a manifest interest in providing a forum for local creditors injured by alleged frauds effected through a California subsidiary."

Quoting from another case, the court in *Empire Steel* said: " 'The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee *or in any other* manner.' " (*Id.* at p. 835.) (Italics by the court.)

Propane Gas is subject to the jurisdiction of California courts not because Geni-Chlor is its wholly owned subsidiary, but because there was evidence before respondent court upon which it could base an implied finding that Propane Gas was a member of a joint venture which was engaged in business in California through Geni-Chlor not as an alter ego, but as its agent or instrumentality. ■ Where charges of fraud on California citizens are involved, jurisdictional principles should be liberally construed and interpreted in order to accomplish substantial justice for California citizens.

We conclude therefore that the trial court properly denied the motion of Propane Gas to quash service of summons upon it.

■ When a trial court erroneously denies a motion to quash service of summons made on the ground that the court has no personal jurisdiction over the moving party, mandamus is the appropriate remedy to review the erroneous ruling. (*Owens* v. *Superior Court* (1959) 52 Cal.2d 822, 827 [345 P.2d 921, 78 A.L.R.2d 388]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 85, 187, pp. 3859, 3946.) The petition

here was filed within the time allowed by law as extended by the trial court. (Code Civ. Proc., § 418.10.)

The order to show cause heretofore issued herein is discharged and set aside insofar as it relates to Propane Gas.

Let a peremptory writ of mandate issue directing respondent court to vacate and set aside the denial of the motion of Natural Gas to quash service of summons on it and to grant such motion.

Brown (G. A.), P. J., and Gargano, J., concurred.