Filed 4/25/14  Target Media Partners v. Hartford Financial Services  CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TARGET MEDIA PARTNERS, LLC, <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> HARTFORD FINANCIAL SERVICES GROUP, INC., <br><br> Cross-defendant and Respondent. | B248293 <br><br> (Los Angeles County <br> Super. Ct. No. BC456150) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Sanchez-Gordon, Judge.  Affirmed.

Hathaway Perrett Webster Powers Chrisman & Gutierrez, Joel Mark and Brook J. Carroll for Cross-complainant and Appellant.

Berger Kahn, Ann K. Johnston and Ted A. Smith for Cross-defendant and Respondent.

* * * * * *

Defendant and Cross-complainant Target Media Partners, LLC (Target Media) appeals a judgment following the granting of a demurrer and dismissal of its cross-complaint against The Hartford Financial Services Group, Inc. (Hartford Financial Services), without leave to amend. We affirm.

## BACKGROUND

At all relevant times, Trend Offset Printing Services, Inc. (Trend Offset) (a Texas company, and not a party to the current litigation or appeal) operated a printing business. Trend Offset purchased a liability insurance policy from Hartford Insurance Company of the Midwest (Hartford of the Midwest).

Specialty Marketing Corporation, Inc. (Specialty Marketing), doing business as Truck Market News (not a party to the current litigation or appeal) produces a monthly "magazine" publication distributed for free in racks at truck stops throughout the central and eastern parts of the United States. Specialty Marketing entered a contract with Trend Offset to print thousands of copies of Truck Market News at Trend Offset's printing facility in Texas.

Specialty Marketing also entered into a contract with Target Media, a Nevada corporation with its principal place of business operations in Southern California, to physically distribute copies of Truck Market News (printed by Trend Offset) to truck stops.

In 2007, Specialty Marketing sued Target Media in Alabama state court. In that action, Specialty Marketing alleged that Target Media, instead of distributing copies of Truck Market News, simply threw the printed copies of the publication in the trash. Tort and contract-related claims were alleged. An Alabama jury awarded roughly $1 million in compensatory damages and a like amount in punitive damages in favor of Specialty Marketing and against Target Media. The Alabama Supreme Court eventually affirmed the judgment in part (as to the contract claims) and reversed in part (as to tort claims).

Meanwhile, in 2009, Specialty Marketing filed an action against Trend Offset in the Orange County Superior Court. In its California state action, Specialty Marketing alleged claims paralleling those it had alleged in its Alabama state action against Target

2

Media.  In broad terms, Specialty Marketing alleged that Trend Offset failed to ensure that Target Media properly distributed Truck Market News.  In October 2010, Specialty Marketing and Trend Offset settled the Orange County action for a confidential amount.

In February 2011 (as amended April 2012), Hartford of the Midwest filed the lead action giving rise to Target Media's cross-complaint here, asserting claims against Target Media for comparative equitable indemnity and comparative contribution (the subrogation action).  Hartford of the Midwest alleged it paid the settlement to Specialty Marketing on behalf of Trend Offset in the Orange County action, but that all or part of that money should be shared by Target Media because Target Media had been the one that threw the copies of Truck Market News in the trash.

Target Media sought to file a cross-complaint in the subrogation action against "The Hartford Insurance Company" for breach of contract and breach of the covenant of good faith and fair dealing based on an insurance policy it had with that Hartford entity.  Hartford of the Midwest opposed the motion in part because the cross-complaint against "The Hartford Insurance Company" was not seeking recovery from the proper party.  Based on the declarations page from Target Media's insurance policy, Hartford of the Midwest argued Target Media was insured by Hartford Fire Insurance Company (Hartford Fire), a related, but distinct entity.  In response, Target Media argued it purchased insurance from "The Hartford Insurance Group," designated with the trade name "The Hartford."  The trial court granted the motion and permitted Target Media to file the cross-complaint against "The Hartford Insurance Company."

Hartford Fire moved to quash service of the summons for the cross-complaint because no entity named "The Hartford Insurance Company" existed and Hartford Fire issued Target Media's insurance policy.[1]  The trial court granted the motion and Target Media filed its operative first amended cross-complaint.

---

[1]     In this motion, Hartford Fire acknowledged the attorney for Hartford of the Midwest inadvertently omitted "of the Midwest" in the name of the plaintiff bringing the subrogation action.  The error was corrected to name "Hartford Insurance Company of the Midwest" as the plaintiff.

In the first amended cross-complaint, Target Media maintained its claims for breach of contract and breach of the covenant of good faith and fair dealing, but named the following Hartford-related entities as cross-defendants: Hartford Financial Services, Hartford Fire, and Hartford of the Midwest. The cross-complaint alleged Hartford Financial Services was "a corporation organized and existing under the laws of the State of Connecticut and authorized through various of its subsidiaries to transact, and transacting, business in the State of California as a liability insurer." Target Media alleged it was insured by Hartford Financial Services' subsidiary Hartford Fire, and Trend Offset was insured by Hartford Financial Services' subsidiary Hartford of the Midwest. But "[d]ue to the unity of interest among all three of the Hartford-related insuring entities, and due to the fact that all three owed the same duties to an insured of their related entities and collective enterprise, [Target Media], the three Hartford-related cross-defendants are collectively hereinafter referred to as 'Hartford.'" Likewise, "at all times herein mentioned each of the cross-defendants was the agent and employee of each of the remaining cross-defendants, and in doing the things alleged herein, was acting within the scope and course of such agency and employment."

By alleging all these Hartford companies were subsidiaries acting together, Target Media set up its primary allegations that "Hartford," Trend Offset, and Specialty Marketing entered into secret settlement negotiations in the Orange County action to set up the subrogation claim by "Hartford" against its own insured, Target Media. Target Media also alleged "Hartford" wrongfully refused to defend it in the subrogation action and wrongfully denied insurance coverage for that action.

Hartford Fire answered the cross-complaint, while Hartford Financial Services and Hartford of the Midwest filed demurrers, arguing neither was a party to Target Media's insurance policy and the factual allegations regarding the interrelationship of the Hartford companies were insufficient to create liability. The trial court sustained the demurrers without leave to amend and entered judgment in favor of those parties. Target Media

4

appealed the judgment as to both entities.[2]  We previously dismissed the appeal as to Hartford of the Midwest, so we confine our review to Target Media's appeal of the judgment in favor of Hartford Financial Services.[3]

## DISCUSSION

### 1.  Legal Standard

We review the trial court's granting of the demurrer de novo to determine whether, as a matter of law, the complaint alleges a valid cause of action.  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506 (*Jenkins*).)  We assume the truth of all properly pleaded and judicially noticeable material facts, but we will not assume the truth of contentions, deductions, or conclusions of law.  (*Ibid.*)  If the complaint fails to state a claim, the plaintiff bears the burden to demonstrate that there is a reasonable possibility the defects can be cured by amendment.  (*Id.* at pp. 506-507.)

### 2.  Judicial Notice

Target Media requests judicial notice of a motion in limine and opposition filed in the Orange County action and the Alabama Supreme Court's opinion in the Alabama case.  We grant this request.  (Evid. Code, § 452, subd. (d); *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098.)  Hartford Financial Services requests judicial notice of the registration of the service mark "The Hartford" with the United States Patent and Trademark Office; the declaration pages from Target Media's insurance policies; and a document entitled "Legal Notice," which Hartford Financial Services printed from the

---

[2]    On Target Media's request, the trial court stayed the proceedings in light of the appeal.

[3]    We dismissed the appeal of the judgment in favor of Hartford of the Midwest under the "one final judgment" rule because the main subrogation action by Hartford of the Midwest remained pending.  Nothing between Target Media and Hartford Financial Services remains pending after dismissal of the cross-complaint against Hartford Financial Services, so we may review that judgment.  (*CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.* (2006) 142 Cal.App.4th 453, 464.)  In light of our dismissal of the appeal as to Hartford of the Midwest, we decline Target Media's invitation to review any issues related to Hartford of the Midwest in this appeal.

5

Web site <http://www.thehartford.com/legal-notice>.  We grant the request with regard to the service mark registration (Evid. Code, § 452, subd. (c)) and the policy declaration pages (Evid. Code, § 452, subd. (h)).  We deny the request with regard to the "Legal Notice" document because it is not reasonably beyond dispute.  (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.)

**3.  Analysis**

Target Media concedes that, as a stranger to the insurance contract between Target Media and Hartford Fire, Hartford Financial Services cannot be liable for its breach.  (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576; *Henry v. Associated Indemnity Corp.* (1990) 217 Cal.App.3d 1405, 1416-1417.)  Target Media attempts to impose liability on Hartford Financial Services by arguing it can be considered Target Media's insurer under one of three theories:  alter ego/unity of interest, agency, or joint venture.[4] In support of these theories, Target Media alleged the Hartford entities shared a "unity of interest," "owed the same duties to the insured," and were agents of each other.  These were all legal conclusions the trial court was free to disregard in ruling on the demurrer.  (*Jenkins, supra*, 216 Cal.App.4th at p. 506.)  The only fact alleged in the cross-complaint related to these theories was the parent/subsidiary relationship among the Hartford entities.  Generally, "[a] parent corporation is not liable on the contract or for the tortious acts of its subsidiary simply because it is a wholly owned subsidiary.  Some other basis of liability must be established.  '*Stock ownership alone is not enough*.'  [Citation.]" (*Northern Natural Gas Co. v. Superior Court* (1976) 64 Cal.App.3d 983, 991 (*Northern Natural Gas*); see *United States v. Bestfoods* (1998) 524 U.S. 51, 61 ["It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another

---

[4]   Target Media did not argue either an alter ego or joint venture theories in opposition to Hartford Financial Services' demurrer.  At least with respect to the alter ego theory, Hartford Financial Services argues Target Media forfeited that argument.  We will assume these theories have not been forfeited because they fail on the merits.

corporation's stock) is not liable for the acts of its subsidiaries."].)  With that fundamental principle in mind, we turn to Target Media's specific theories of joint liability.

## A.  Alter Ego

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests."  (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300.)  Although the application of the alter ego doctrine depends on the circumstances of each case, two general requirements exist:  (1) a "'unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist'" and (2) "'if the acts are treated as those of the corporation alone, an inequitable result will follow.'"  (*Ibid.*)  "And 'only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual.'  [Citation.]"  (*Ibid.*)  In the context of a parent/subsidiary relationship, "'[t]he corporate entity of the wholly owned subsidiary will be disregarded only when recognition of the separate entities of parent and subsidiary would produce fraud or injustice.  [Citation.]  Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence [citations].'  [Citations.]"  (*Westinghouse Electric Corp. v. Superior Court* (1976) 17 Cal.3d 259, 274.)  "Alter ego is an extreme remedy, sparingly used."  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 (*Sonora*).)

Alter ego may be shown through a host of factors.  (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512-513 [listing 14 nonexhaustive factors].)  We need not recount them all because Target Media invokes only Hartford Financial Services' common ownership and control of Hartford Fire and Hartford of the Midwest.  These facts are merely incidents of a parent/subsidiary relationship and do not demonstrate alter ego.  (*Dos Pueblos Ranch & Imp. Co. v. Ellis* (1937) 8 Cal.2d 617, 621 ["'[T]he mere circumstances that all of the capital stock of a corporation is owned or controlled by one or more persons, does not, and should not, destroy its separate existence; were it otherwise, few private corporations could preserve their distinct identity, which would

7

mean the complete destruction of the primary object of their organization.'"]; *Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 499 ["'Mere ownership of all the stock and control and management of a corporation by one or two individuals is not of itself sufficient to cause the courts to disregard the corporate entity. [Citations.]'"].)

Target Media further argues Hartford Financial Services acted in bad faith when it "manipulated its subsidiaries to [Target Media's] detriment, causing Hartford . . . of the Midwest to settle the Trend [Offset] claim in bad faith, and manipulating the settlement to set up a subrogation claim against [Target Media]." Yet, Target Media did not allege Hartford Financial Services manipulated the *corporate parent/subsidiary structure* when entering the alleged secret settlement with Specialty Marketing in order to commit any fraud on Target Media. (*Sonora, supra*, 83 Cal.App.4th at p. 538 ["The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds."]; *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 742 (*Laird*) ["To put it in other terms, the plaintiff must show 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former . . . .' [Citation.]"], disagreed with on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.)

Nor do we see any inequity in Target Media being unable to sue Hartford Financial Services for breaching an insurance policy Target Media obtained from Hartford Fire. Hartford Fire answered the cross-complaint and remains a cross-defendant, so Target Media may yet recover for its claims against the entity that actually issued the policy Target Media claims was breached.[5] If anything, the inequities counsel against requiring that Hartford Financial Services answer Target Media's claims for breaching an insurance policy it did not issue in the absence of even the faintest hint it

---

[5] Hartford Fire moved for summary judgment on the coverage issues raised in the cross-complaint, but apparently that motion remains pending in light of the trial court's stay of the case.

did anything to jeopardize the corporate separateness of the subsidiary that actually issued the policy. (See *Laird, supra*, 68 Cal.App.4th at p. 742 [finding risk plaintiff would lose her lawsuit in the absence of an alter ego finding was not inequitable, but it would be inequitable "to impose liability on a defendant who has none as a matter of law"].)

In its reply brief, Target Media claims it could amend its cross-complaint to sufficiently allege an alter ego theory, but then fails to identify any facts it would add if given the opportunity to do so. Thus, Target Media has not carried its burden to demonstrate a reasonable possibility it could amend the cross-complaint to state a claim. Thus, the trial court properly sustained the demurrer on this basis.

## B. Agency

"'An agent "is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." [Citation.]'" (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 620.) "However, to establish a parent corporation's liability for acts or omissions of its subsidiary on an agency theory, a plaintiff must show more than mere representation of the parent by the subsidiary in dealings with third persons. The showing required is that 'a parent corporation *so controls the subsidiary* as to cause the subsidiary to become *merely* the agent or instrumentality of the parent[.]' [Citations.]" (*Laird, supra*, 68 Cal.App.4th at p. 741.)

As we have already pointed out, Target Media's allegation that the Hartford entities were agents of each other was a legal conclusion the trial court was free to disregard, and the Hartford entities' parent/subsidiary relationship alone was insufficient to show joint liability. Target Media offers additional facts that, in its view, show an agency relationship, namely: a close financial connection among the Hartford entities; ownership of common stock; use of the same website for policyholder services and for marketing common products; use of the same marketing materials; use of the same physical address; and Hartford Financial Services' ability to dictate coverage of its subsidiaries.

9

None of these facts demonstrates activity beyond that in a typical parent/subsidiary relationship.  (*Sonora, supra*, 83 Cal.App.4th at p. 541 ["The relationship of owner to owned contemplates a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter."].)  Even if Hartford Financial Services reported Hartford Fire's earnings as a part of its total earnings and shared common stock with its subsidiaries,  that is common in a parent/subsidiary relationship.  (*Sonora, supra*, at pp. 549-550; *Northern Natural Gas, supra*, 64 Cal.App.3d at p. 991.)  Further, Target Media cites no cases finding the subsidiary's use of the parent company's website, marketing materials, and physical address rises to the level of control sufficient to create an agency relationship between a parent and subsidiary.

Target Media further argues Hartford Fire used Hartford Financial Services' logo on policy documents, suggesting Hartford Financial Services gave Hartford Fire authority to enter into dealings with third persons.  But Target Media's premise is flawed because the judicially noticeable service mark registration for the logo reflects it was registered to Hartford Fire, not Hartford Financial Services.  Even if Hartford Financial Services owned the logo, "the mere appearance of a parent's logo on its subsidiary's documents [is] insufficient to prove the existence of a single entity" for agency purposes.  (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 434-435.)

Finally, Target Media cites statements on Hartford Financial Services' website to show a close financial connection among the Hartford entities and Hartford Financial Services' ability to dictate coverage.  As alleged in the cross-complaint, Hartford Financial Services' website indicated it is "'a leading provider of insurance and wealth management services to millions of consumers and businesses worldwide.'"  According to Target Media, one service Hartford Financial Services provided through Hartford Fire and Hartford of the Midwest was the commercial general liability insurance policy issued to Target Media as shown by the statement on the website that "'[a]ll Hartford coverages and services described on this page may be offered by one or more of the property and casualty insurance company subsidiaries of The Hartford Financial Services Group,

10

Inc.'"  Neither one of those statements says anything about Hartford Financial Services' financial connection to its subsidiaries or its ability to dictate coverage.  And even if they did, a parent's setting of policies and procedures of a subsidiary is appropriate in a parent/subsidiary relationship.  (*Sonora, supra*, 83 Cal.App.4th at p. 551.)

Because all of Target Media's proposed additional facts are consistent with a parent/subsidiary relationship, Target Media has not demonstrated a reasonable possibility it could amend its cross-complaint to allege Hartford Financial Services' liability on an agency theory.  The demurrer was properly sustained on this basis.

*C.  Joint Venture*

"'There are three basic elements of a joint venture:  the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise.'  [Citations.]"  (*Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 872.)  "'Such a venture or undertaking may be formed by parol agreement [citations], or it may be assumed as a reasonable deduction from the acts and declarations of the parties [citations].'  [Citation.]  Whether a joint venture actually exists depends on the intention of the parties.  [Citations.]"  (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 819.)

Target Media rests its joint venture allegations on essentially the same facts as its other theories, albeit fitting them into the joint venture requirements:  the Hartford entities share a common business of selling Hartford-branded insurance; Hartford Financial Services controls its subsidiaries through standardized insurance policies; the Hartford entities had an understanding they would share profits and losses, as shown by the joint financial reports; and the Hartford entities exercised joint control over their common business.  As with the alter ego and agency theories, these allegations fail because they show nothing more than a standard parent/subsidiary arrangement.  If we were to hold otherwise, we would transform every parent/subsidiary relationship into a joint venture, exposing the parties to significant unanticipated liability.  Target Media has

11

not shown a reasonable possibility it could allege any other facts to demonstrate a joint venture, so the demurrer was properly sustained on this basis.[6]

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


FLIER, J.

WE CONCUR:


RUBIN, ACTING P. J.


KUSSMAN, J.[*]

---

[6]      Target Media includes additional arguments in its opening brief on the merits of its breach of contract claim and a potential defense based on joint liability.  We need not consider these irrelevant points.

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.