Filed 11/22/21  Schwendeman v. Travel Staff CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CONNIE SCHWENDEMAN,<br>        Plaintiff and Appellant,<br>v.<br>TRAVEL STAFF, LLC et al.,<br>        Defendants and Respondents. | A159147<br><br>(Contra Costa County<br>Super. Ct. No. MSC1801132) |

As part of appellant Connie Schwendeman's employment as a traveling nurse, she signed an arbitration agreement with respondent Travel Staff LLC.  She later sued Travel Staff and respondents Cross Country Healthcare, Inc. and Cross Country Staffing, Inc., which were not signatories to the arbitration agreement.[1]  Cross Country filed a motion to compel arbitration, which the trial court granted.  Schwendeman argues that she should not be forced to arbitrate with nonparties to the arbitration agreement.  Because the trial court applied well settled exceptions to the requirement that only signatories to an arbitration may compel arbitration, we affirm.

---

[1] We sometimes refer to these two respondents collectively in the singular as "Cross Country."

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Travel Staff "provides healthcare staffing and workforce management solutions by offering temporary placement of travel nurses." Schwendeman is a registered nurse. She worked as a "Traveler" from December 2016 to April 2017 in Los Angeles and then from April to July 2017 in Walnut Creek. The operative complaint alleges that Travel Staff "does not actually employ Travelers," and that Travel Staff has no supervisors or managers. Instead, according to the complaint, Travel Staff is designated as "the nominal employer," but Cross Country Healthcare, Inc. and Cross Country Staffing, Inc. are "the actual employers of Travelers because they exercise control over Travelers' wages, hours, and working conditions."

On March 23, 2017, while Schwendeman was working as a travel nurse, she electronically executed (using a program called "DocuSign") an acknowledgement of receipt of a 2017 Cross Country Staffing document titled "Employment Terms & Conditions" (Terms and Conditions Booklet). The booklet contained a section titled "XXVI. Miscellaneous," providing in part that "[a]ny and all disputes arising under this Agreement or in any way related to the relationship between the Company and you shall be governed by the laws of the State of Florida regardless of where your services are performed. The jurisdiction and venue of such disputes shall reside exclusively in the Judicial Circuit in and for Palm Beach County, Florida without regard to its principles of conflicts of law." Although the record contains later versions of the booklet with the same section, Schwendeman did not sign acknowledgements of any of these later versions.

Also on March 23, 2017, shortly after she signed the acknowledgment of having received the Terms and Conditions Booklet, Schwendeman

2

electronically executed an arbitration agreement with Travel Staff. Travel Staff is identified in the agreement as "A Cross Country Staffing Company." The agreement provides in relevant part that Travel Staff and Schwendeman "agree that binding arbitration shall be the exclusive remedy for all claims between them, including employment-related or other disputes involving Travel Staff clients and vendors. Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any covered claim. A 'covered claim' is any claim (except a claim that by law is non-arbitrable) now existing or arising in the future, including but not limited to a claim for: breach of contract; violation of any provision of the California Labor Code or a Wage Order; unpaid expenses or wages; unpaid compensation or penalties for missed meal or rest breaks; wrongful termination; unfair competition; or discrimination, harassment or unlawful retaliation." The agreement further provides that "[e]ach party also waives the right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in arbitration or otherwise." Schwendeman does not in this appeal challenge the agreement's validity or enforceability, and it is undisputed that Cross Country was not a signatory to the agreement.

Schwendeman stopped working as a Traveler a few months after having signed the arbitration agreement. A little over a year later, in June 2018, she sued Travel Staff. The complaint does not appear in the record on appeal, but Schwendeman apparently alleged individual causes of action for wage-and-hour violations (Labor Code, §§ 558, 1197.1)[2] as well as claims under the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq., PAGA). Travel Staff filed a petition to compel arbitration, and the

_____

[2] All statutory references are to the Labor Code unless otherwise specified.

3

trial court ordered Schwendeman to arbitrate her individual claim for unpaid wages. Schwendeman apparently abandoned that claim.

Then in August 2019, Schwendeman filed a first amended complaint, adding both Cross Country entities as defendants. The complaint purported to be a class action lawsuit against Cross Country, which was alleged to have implemented the policies that gave rise to the Labor Code violations listed in the complaint. Schwendeman alleged that Cross Country failed to pay overtime (§§ 510, 1194), failed to furnish accurate wage statements (§ 226), willfully failed to pay wages owed to a discharged employee (§ 203), and engaged in unfair business practices (Bus. & Prof. Code, § 17200 et seq.). Schwendeman also again alleged a PAGA cause of action against Travel Staff.

Cross Country filed a petition to compel arbitration and to dismiss or stay proceedings. It argued both that (1) Schwendeman was estopped from avoiding arbitration because her class claims against Cross Country arose out of her employment with Travel Staff, and that (2) Cross Country could enforce the Travel Staff arbitration agreement as a result of agency principles. Schwendeman opposed the petition.

The trial court agreed with Cross Country and granted the petition. It thus ordered Schwendeman to arbitrate her individual claims against Cross Country, and it dismissed all of her putative class action claims against Cross Country. Because that left only Schwendeman's claim against Travel Staff,

4

the court dismissed all claims against Cross Country and stayed the remaining claim against Travel Staff. Schwendeman appealed.[3]

## II.
### DISCUSSION

Schwendeman contends that she cannot be compelled to arbitrate her claims against Cross Country because the Cross Country entities were not parties to the arbitration agreement with Travel Staff. She is mistaken.

Schwendeman is correct that "the general rule is 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 785 (*Garcia*).) But, as the trial court found, two exceptions to that rule apply here, one arising under equitable-estoppel principles and the other arising under agency principles.

We begin with the equitable-estoppel exception. "Under this exception, 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claim when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' [Citation.] The doctrine applies where the claims are ' " 'based on the same facts and are inherently inseparable' " from

---

[3] "Orders granting motions to compel arbitration are generally not immediately appealable. [Citations.] Such orders are normally subject to review only on appeal from the final judgment. (Code Civ. Proc., §§ 906, 1294.2; [citation].)" (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121–1122.) Schwendeman contends that the order granting arbitration is appealable because it eliminated Cross Country from the action and thus is final as to those entities and because the elimination of the putative class claims made the order appealable under the "death knell doctrine." Respondents do not challenge the appealability of the order. We need not decide the issue because even if the order were not appealable we would exercise our discretion to treat the appeal as a petition for a writ of mandate. (*Id.* at p. 1123.)

the arbitrable claims against signatory defendants.'" (*Garcia*, *supra*, 11 Cal.App.5th at p. 786.)

*Garcia*, which was cited by the trial court in its order compelling arbitration, is on point and directs the outcome in this case. There, a temporary staffing company hired an hourly employee, who signed an arbitration agreement providing that binding arbitration would determine "any dispute" between the company and the employee. (*Garcia*, *supra*, 11 Cal.App.5th at p. 784.) The agreement defined arbitrable disputes as including "those regarding wages, vacation pay, sick time pay, overtime pay, state and federal employment laws and regulation," including specific federal statutes. (*Ibid.*) The employee then was assigned to work for a separate company. (*Ibid.*) He later sued both the staffing company and the company to which he had been assigned for Labor Code violations and unfair business practices regarding payment of his wages during his assignment to the company. (*Id.* at p. 785.) Each cause of action in the operative complaint was alleged against both companies, and both companies moved to compel arbitration. (*Ibid.*) The trial court granted the motion, and the Court of Appeal affirmed. (*Id.* at pp. 785, 789.) The court concluded that all of the employee's claims were "intimately founded in and intertwined with his employment relationship with [the staffing company], which [wa]s governed by the employment agreement compelling arbitration." (*Id.* at p. 787; see also *Franklin v. Community Regional Medical Center* (9th Cir. 2021) 998 F.3d 867, 871–872 [*Garcia* required that travel nurse arbitrate claims with nonsignatory hospital where they were intertwined with employment contract with staffing agency].)

Likewise here, Schwendeman's arbitration agreement with Travel Staff provides that it shall cover "*all claims* between them, *including employment-*

6

*related* or other disputes involving Travel Staff *clients and vendors*." (Italics added.) Because Schwendeman's employment relationship with Cross Country arose because of her relationship with Travel Staff, her causes of action against Cross Country could not be more "founded in and intertwined with [her] employment relationship with" Travel Staff. (*Garcia*, *supra*, 11 Cal.App.5th at p. 787.) Schwendeman contends that equitable estoppel does not apply because the arbitration clause was not as broadly worded as the one in *Garcia*. Instead, according to Schwendeman, the clause expressly applied only to claims "between them" (i.e., Schwendeman and Travel Staff). But she omits the additional language that the agreement covers disputes "between them, *including* employment-related or other disputes involving *Travel Staff clients and vendors*." (Italics added.) This language specifically contemplated that parties other than Travel Staff would be covered by the agreement, and it did not, as appellant's counsel insisted at oral argument, rule out Schwendeman's employment claims against Cross Country. Under these circumstances, the trial court properly found that the equitable-estoppel exception to the rule that one must ordinarily be a party to an arbitration agreement to be bound by it applies.

The trial court also properly found that a second exception to the general rule, one based on agency principles, applies. "The agency exception is another exception to the general rule that only a party to an arbitration agreement may enforce it. [Citation.] The exception applies, and a defendant may enforce the arbitration agreement, 'when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement . . . .' " (*Garcia*, *supra*, 11 Cal.App.5th at p. 788; see also *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [where individual defendants were not signatories to arbitration agreement but were alleged to be acting as agents of signatory,

they were "entitled to the benefit of the arbitration provisions"].)  In *Garcia*, the employee alleged that the defendants were acting as agents of one another as joint employers, and each cause of action alleged identical claims against all defendants without distinction.  (*Garcia*, at p. 788.)  The court held that the agency exception thus applied.  (*Ibid.*)  Likewise here, Schwendeman's first amended complaint alleged that Cross Country "designate[d]" Travel Staff as a nominal employer and that Travel Staff "relie[d] exclusively on [the Cross Country entities] for all services related to the employment of Travelers."  It further alleged that Cross Country "caused Travel Staff, LLC, *acting on Cross Country's behalf*, to violate Labor Code sections 201 and 510."  (Italics added.)

In her briefing on appeal, Schwendeman does not directly address the agency exception.  Instead, she argues that the trial court somehow conflated the issues of agency and alter ego and treated Travel Staff and the Cross Country entities "as one and the same entity under the arbitration agreement."  To be sure, "[a]gency and alter ego are two different and distinct concepts.  In the case of an alter ego, the court pierces the corporate veil.  In the case of an agency the corporate identity is preserved but the principal is held liable for the acts of its agent."  (*Northern Natural Case Co. v. Superior Court* (1976) 64 Cal.App.3d 983, 994.)  But we disagree with Schwendeman's contention that the trial court somehow failed to draw a distinction between the two principles.  Agency and "veil-piercing/alter ego" are two *separate* exceptions to the general rule that arbitration is a contractual right available only to those who have signed the agreement. (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 [noting that federal courts have identified five separate exceptions].)

8

Schwendeman relies on *Hogan v. SPAR Group, Inc.* (1st Cir. 2019) 914 F.3d 34, but that case actually supports the trial court's order compelling arbitration. In *Hogan*, an employee signed an agreement that included an arbitration clause with a staffing company, which then assigned the employee to perform services for a retail-services provider. (*Id.* at p. 36.) The agreement was limited to disputes "between the Parties" (*id.* at pp. 37–38), which were "unambiguously defined" as the employee and the staffing company. (*Id.* at p. 41.) Although the two companies were affiliated with one another and the staffing company provided most of the retail-services provider's workers, the court concluded that the retail-services company could not compel arbitration when the employee sued both companies because the arbitration clause was clearly limited to the two signatories. (*Id.* at pp. 36, 40.) Notably, the agreement elsewhere referred to the staffing company's customers, but it omitted that reference in the arbitration clause. (*Id.* at p. 40.) The staffing company "could have easily modified the arbitration clause to make it applicable to" any dispute between the parties " 'and/or any [staffing company] customer,' " but did not do so. (*Id.* at p. 40.) Here, of course, the agreement specifically referred to Travel Staff "clients and vendors." And while the defendant companies in *Hogan* "chose to conduct their business as separate corporate structures" (*id.* at p. 42), here the principal-agent relationship between Cross Country and Travel Staff was conceded by *Schwendeman* who alleged that Cross Country designated Travel Staff as "the nominal employer" of travel nurses and thus controlled the Labor Code violations that allegedly occurred. The trial court here thus did not "disregard[]" respondents' corporate forms or "deem[] . . . [them] to be one and the same under the arbitration agreement," as Schwendeman argues,

9

but followed the law as it applies to the corporate relationship Schwendeman alleged.

Schwendeman's other attempts to avoid arbitration likewise fail. She points to the fact that the Cross Country Terms and Conditions Booklet contained a "judicial forum clause." She contends that because she signed the booklet on the same day as the arbitration agreement, the two documents must be construed together as one agreement. (*Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1320 [several papers relating to same subject matter and executed as parts of substantially one transaction are to be construed together as one contract, whether or not they expressly refer to one another].) Cross Country, by contrast, contends that because the Terms and Conditions Booklet provided that the company "reserve[d] the right to change, add to, or delete any of [its] provisions . . . at any time," and Schwendeman signed the arbitration agreement *after* she signed an acknowledgement of the booklet, the arbitration agreement "superseded" the forum-selection clause.

We do not sanction an employer having an employee sign two conflicting documents on the same day and later claiming that a provision in one of those documents has no effect because of the order in which the documents were signed. But it is not clear to us that the two documents here are in fact as inconsistent as Schwendeman insists. The Terms and Conditions Booklet states that the "jurisdiction and venue of . . . disputes . . . shall reside exclusively in the Judicial Circuit in and for Palm Beach County, Florida." This language specifies a location for the resolution of disputes but

10

does not with certainty preclude *arbitration* in that location.[4]  This is distinguishable from language in a case relied on by Schwendeman, where an arbitration agreement conflicted with a membership agreement that provided that any dispute would be brought "in the *state and federal courts*" in Salt Lake City, Utah.  (*O'Shaughnessy v. Young Living Essential Oils, L.C.* (5th Cir., April 28, 2020, No. 19-51169) 2020 U.S.App. Lexis 14081, italics added.)  In any event, we agree with Cross Country that even if the forum clause applied, that would not benefit Schwendeman in this action because the clause stated that any dispute would be resolved *in Florida* using *Florida law*.  Schwendeman's argument that her agreement with Cross Country contemplates the right to sue in court falls flat since she has sued in a different state than the one identified in the agreement.  True, if we were to find the arbitration agreement unenforceable, Schwendeman would be free to argue on remand that forcing her to litigate in Florida would diminish her unwaivable statutory rights (e.g., *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 154–155), but we decline to do so.

Finally, we reject Schwendeman's argument that the trial court's conclusion conflicts with the Federal Arbitration Act (FAA, 9 U.S.C. §§ 1–16).  It is of course true, as Schwendeman notes, that one of the FAA's

_____

[4] At oral argument, Schwendeman's counsel asserted that trial courts in Florida are called judicial circuits and that the reference to "the Judicial Circuit in and for Palm Beach County, Florida" was thus necessarily a reference to a judicial forum.  (Cf. *Bach v. Vladigor Investments, Inc.* (Fla. Ct.App. 2021) 325 So.3d 41 [appeal of order "from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County"].)  While we do not have the entire employee handbook and believe a plausible argument could still be made that the language allows parties to arbitrate in Palm Beach, we agree that the language of the booklet suggest that disputes would be resolved in a Florida court.  Still, we cannot agree that this language overrides the more specific and unambiguous arbitration agreement.

foundational principles is that arbitration is a matter of consent and that courts must enforce arbitration agreements according to their terms. (*Lamps Plus, Inc. v. Varela* (2019) __ U.S. __, __ [139 S.Ct. 1407, 1412, 1415].) But " '[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.' " (*Franklin v. Community Regional Medical Center*, *supra*, 998 F.3d at p. 870.) Here, state law contemplates arbitration for nonsignatories under certain circumstances that were met here. This case is thus distinguishable from *Lamps Plus*, where the court held that California's doctrine of *contra proferentem* (where ambiguity in a contract should be construed against the drafter) should not be used to interpret an ambiguous contract term as requiring class arbitration. (*Lamps Plus*, at pp. 1417–1418.)

We recognize that if the facts alleged in Schwendeman's complaint are true, compelling her to arbitrate without resort to a class remedy in court may deprive her of any meaningful recovery. This may be what motivated lawmakers to enact section 432.6, which bars employers from requiring employees to consent to arbitration as a condition of employment. (E.g., *Chamber of Commerce of the United States v. Bonta* (9th Cir., Sept. 15, 2021, No. 20-15291) __ F.4th __, 2021 U.S.App. Lexis 27659.) The statute applies only to employment contracts entered into, modified, or extended on or after January 1, 2020 (§ 432.6, subd. (h)), and thus does not apply to Schwendeman's circumstances. And even if it did, the executed arbitration agreement would still be valid. (§ 432.6, subd. (f).)

### III.
### DISPOSITION

The trial court's order is affirmed. Respondents shall recover their costs on appeal.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Sanchez, J.


*Schwendeman v. Travel Staff LLC et al.*  A159147